## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Merrill Manufacturing Company, an Iowa Corporation<br><br>Plaintiff,<br><br>vs.<br><br>Simmons Manufacturing Company, a Georgia Corporation<br><br>Defendant. | CIVIL CASE NO. 1:20-cv-03941-MLB<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff Merrill Manufacturing Company (hereinafter "Plaintiff" or "Merrill") files this Complaint against Defendant Simmons Manufacturing Company (hereinafter "Defendant" or "Simmons"), alleging as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this Complaint for design patent infringement of U.S. Design Patent No. D881,817 (the "'817 Patent"), trade dress infringement, and unfair competition. Plaintiff is seeking preliminary and permanent injunctive relief, recovery of wrongfully made profits and compensatory damages. By reason of Defendant's infringement and/or willful infringement of the '817 Patent, trade

dress infringement, and unfair competition, Plaintiffs are also seeking trebled damages and attorney fees.

## PARTIES

2.      Merrill Manufacturing Company is an Iowa Corporation, formed and existing under the laws of the State of Iowa, with its principal place of business at 315 Flindt Drive, Storm Lake, Iowa 50588.

3.      Upon information and belief, Simmons Manufacturing Company is a corporation formed under the laws of the State of Georgia, with its primary place of business at 1608 Highway 20 East, McDonough, Georgia 30252.

## JURISDICTION AND VENUE

4.      This action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.,* the Patent Act of 1953 codified in Title 35 of the United States Code §§ 100 *et seq.,* and contains related Iowa statutory and common law claims.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121, as this is an action arising under the laws of the United States and relating to trade dress.

6.      This Court has jurisdiction over the subject matter of Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338 (original jurisdiction for patent actions).

7.      This Court has subject matter jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to Plaintiff's Lanham Act claims that they form part of the same case or controversy as the federal claims herein.

8.      Venue is proper in this district pursuant to 28 U.S.C §1391(b) because a substantial part of the events that give rise to this action occurred in this judicial district.

9.      Venue is proper in this district pursuant to 28 U.S.C §1400(b) because Defendant resides in this district.

10.     Venue is proper in this district pursuant to 28 U.S.C §1400(b) because Defendant committed acts of infringement, has a regular and established place of business in this district, and is incorporated in the State of Georgia.

11.     This Court has personal jurisdiction over Defendant by virtue of systematic and continuous contacts with Georgia and this judicial district.

12.     Upon information and belief, Defendant directed and controlled the infringing conduct within this judicial district.

13.     Defendant also knowingly directed tortious acts at Plaintiff within this judicial district, and has committed tortious acts that it knew or should have known would cause injury to Plaintiff in Georgia.

## RELEVANT FACTS

14.    Plaintiff realleges and incorporates by reference Paragraphs 1–13 as if set forth fully herein.

15.    Plaintiff Merrill is in the business of, *inter alia*, developing, manufacturing, and selling terminal blocks and associated components.

16.    Plaintiff Merrill is the owner of the '817 Patent issued on or about April 21, 2020, and a true and accurate copy thereof is attached as **Exhibit A**.

17.    Since at least as early as December 2018, Merrill has continuously and pervasively marketed and/or sold its Terminal Block, which includes the patented wire connector, under a unique and distinctive trade dress consisting of at least the following elements:

- Chamfered top edges on the sideplates;

- Chamfered side edges on the sideplates;

- A molded-in edge line running the length of the sideplates and the top plate;

- Elevated platforms on the sideplates;

- Sharp transition edges on the sideplates transitioning from the platforms to ramps;

- Sharp transition edges on the sideplates transitioning from the ramps to

the upper surfaces of the sideplates;

- Decorative center rib defining a shelf extending from the top plate;

- Decorative center boss and ramp extending from the top plate; and

- Multifaceted rear plates of spring stop comprising curved and flat surfaces defining a shelf.

18.     The elements of Merrill's trade dress described in the above Paragraph are referred to herein as the Merrill Terminal Block Trade Dress or "MTB Trade Dress." Attached hereto as **Exhibit B** is a true and correct photograph of the terminal block bearing the MTB Trade Dress.

19.     The unique MTB Trade Dress is inherently distinctive.

20.     The strength and distinctiveness of the MTB Trade Dress is buttressed by its secondary meaning in the marketplace. Merrill has marketed, promoted, advertised, and sold its terminal block under the MTB Trade Dress in and through a variety of venues, including in direct customer catalog sales, direct customer online sales, distributer sales, retailer sales, third-party Amazon.com sales, etc. Merrill's terminal block featuring the MTB Trade Dress has achieved hundreds of thousands of dollars in revenue.

21.     Merrill has invested significant time and resources in promoting its high quality terminal blocks and distinctive MTB Trade Dress, and these terminal

blocks have received accolades from distributers and customers. Merrill's terminal blocks bearing the MTB Trade Dress have also been the subject of substantial promotion in World Wide Drilling, Water Well Journal, and Ground Water. Most of these publications prominently feature images of the unique and distinctive MTB Trade Dress.

22.    As a result of the promotional efforts and media attention outlined above, Merrill and its MTB Trade Dress enjoy extensive goodwill and consumer recognition. In sum, MTB MTB Trade Dress is inherently distinctive, has become known by the public as designating the highest level of quality, and has acquired secondary meaning in that it is associated in the minds of the public exclusively with Merrill and its high quality products.

23.    Upon information and belief, Merrill and Defendant are the only entities that produce terminal blocks in the United States that incorporate the aforementioned elements of the MTB Trade Dress.

24.    Further, the MTB Trade Dress is non-functional. The elements which comprise the MTB Trade Dress do not contribute to or improve the functionality of the terminal block or its packaging, nor do they affect the cost or quality of the MTB.

25.    On or about April 21, 2020 the United States Patent and Trademark

Office granted Merrill the '817 Patent.

26.     On or about July 10, 2020 Plaintiff put Defendant on notice of the '817 Patent and the Infringing Trade Dress via email and via hard copy sent via the U.S. mail.

### Defendant's Unlawful Conduct

27.     Upon information and belief, on or around December 3-6, 2018, Defendant Simmons viewed the MTB Trade Dress at least at a Merrill trade booth as Merrill was exhibiting products incorporating the MTB Trade Dress at the National Ground Water Association Groundwater Expo in Las Vegas.

28.     After having the foregoing actual notice of Merrill's rights in the MTB Trade Dress, Defendant began marketing and offering for sale terminal blocks in the United States with elements that comprise the MTB Trade Dress (such elements hereinafter "Infringing Trade Dress"), and that are virtually identical to MTB Trade Dress. Attached hereto as **Exhibit C** is a true and correct photograph of Defendant's terminal block bearing the Infringing Trade Dress.

29.     As shown at **Exhibits C-D**, the Infringing Trade Dress consists of the following elements:

- Chamfered top edges on the sideplates;

- Chamfered side edges on the sideplates;

7

- A molded-in edge line running the length of the sideplates and the top plate;

- Elevated platforms on the sideplates;

- Sharp transition edges on the sideplates transitioning from the platforms to ramps;

- Sharp transition edges on the sideplates transitioning from the ramps to the upper surfaces of the sideplates;

- Decorative center rib defining a shelf extending from the top plate;

- Unique taper from screwhole to bend on brass bracket;

- Decorative center boss and ramp extending from the top plate; and

- Multifaceted rear plates of spring stop comprising curved and flat surfaces defining a shelf.

30.     The Infringing Trade Dress is highly similar in appearance and overall impression to Merrill's MTB Trade Dress. First, both terminal blocks feature the broad range of strikingly similar nonfunctional aesthetic elements of MTB Trade Dress identified above. Second, the Infringing Trade Dress avoids the conspicuous inclusion of any elements that would tend to differentiate or distinguish the Infringing Trade Dress from the MTB Trade Dress.

31.     Merrill's and Defendant's respective trade dresses are used on or in

8

connection with identical terminal block products, and are sold in identical channels of trade. For example, upon information and belief, Defendant's terminal blocks bearing the Infringing Trade Dress have been marketed and distributed online from Defendant in a manner and through the same channel of trade through which Merrill's terminal blocks bearing the MTB Trade Dress are sold.

32.    Upon information and belief, Defendant selected the Infringing Trade Dress with the intent to copy the MTB Trade Dress to mislead consumers and to take advantage of Merrill's goodwill and brand recognition.

33.    Upon information and belief, Defendant adopted the Infringing Trade Dress with the intent to deceive its consumers as to the source or origin of its terminal blocks.

34.    Upon information and belief, Defendant directed and controlled Defendant's infringing conduct, including the design of the Infringing Trade Dress and offer to sell terminal blocks with the Infringing Trade Dress.

35.    Upon information and belief, Defendant was the moving force behind the infringing activity and Defendant's intentional copying of the MTB Trade Dress.

36.    Defendant's Infringing Trade Dress is confusingly similar to Merrill's MTB Trade Dress. Consumers are likely to be confused, mistaken, or deceived as

to the affiliation, connection, or association of Defendant with Merrill, or as to the origin, sponsorship, or approval of Defendant's products by Merrill, in violation of 15 U.S.C. § 1125(a).

37.    Defendant's conduct is also likely to induce consumers to believe, contrary to fact, that its terminal blocks bearing the Infringing Trade Dress are sponsored, endorsed, approved by, or connected with Merrill.

38.    Plaintiff filed this action, which includes a count for design patent infringement of the '817 Patent, on or about July 10, 2020.

39.    Defendant, at least through its counsel, was aware of this action, which includes a count for design patent infringement of the '817 Patent, at least as early as July 15, 2020.

40.    Since at least as early as July 15, 2020, Defendant, at least through its counsel, had knowledge of or was willfully blind to the existence of the of the '817 Patent.

41.     Since at least as early as July 15, 2020 Defendant, at least through its counsel had knowledge of, or was willfully blind to, the fact that Defendant's conduct constituted infringement of the '817 Patent.

42.    Since at least as early as July 15, 2020 Defendant, at least through its counsel had knowledge of, or was willfully blind to, the fact that Defendant's

conduct constituted inducement of infringement of the '817 Patent.

43.    Since at least as early as July 15, 2020 Defendant, at least through its counsel had knowledge of, or was willfully blind to, the fact that Defendant's conduct constituted contributory infringement of the '817 Patent.

44.    Upon information and belief, subsequent to July 15, 2020, Defendant has made, used, sold, offered for sale, and/or imported into the United States a line of terminal blocks containing wire connectors incorporating the design defined by the '817 Patent.

45.    Upon information and belief, subsequent to July 15, 2020, Defendant has made, used, sold, offered for sale, and/or imported into the United States terminal blocks made and sold using the name SIMMONS Quick Set Wire Connections Pressure Switch, including, but not limited to, #SIMS4060.

46.    Defendant, at least through its counsel, was aware of this action, which includes a count for trade dress infringement, at least as early as July 15, 2020.

47.    Since at least as early as July 15, 2020 Defendant, at least through its counsel had knowledge of, or was willfully blind to, the existence of the MTB Trade Dress.

48.    Since at least as early as July 15, 2020 Defendant, at least through its

counsel had knowledge of, or was willfully blind to, the fact that Defendant's conduct constituted infringement of the MTB Trade Dress.

49.    Upon information and belief, Defendant had actual knowledge of Merrill's rights in the MTB Trade Dress such that Defendant's subsequent adoption and use of the Infringing Trade Dress in the United States constitutes willful infringement of Merrill's rights pursuant to 15 U.S.C. § 1117(a).

## COUNT I
## DESIGN PATENT INFRINGEMENT - 15 U.S.C. § 1125

50.    Plaintiff realleges and incorporates by reference Paragraphs 1–49 as if set forth fully herein.

51.    Defendant has made, used, sold, offered for sale, and/or imported into the United States a line of terminal blocks containing wire connectors incorporating the design defined by the '817 Patent.

52.    Defendant's terminal blocks that include wire connectors incorporating the design defined by the '817 Patent include, without limitation, the line of terminal blocks made and sold using the name SIMMONS Quick Set Wire Connections Pressure Switch, including, but not limited to, #SIMS4060.  In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design of this product is substantially the same as the design claimed in the '817 Patent, and the resemblance is such as to deceive such an ordinary observer,

inducing the purchase of the Defendant's product supposing it to be the product based on the '817 Patent.

53.    Defendant has infringed, contributed to, and/or induced infringement of claim 1 of the '817 Patent by making, using, offering to sell, selling within the United States, and/or importing into the United States at least the SIMMONS Quick Set Wire Connections Pressure Switch, including, but not limited to, #SIMS4060 terminal block. Plaintiff includes a true and accurate copy of a Simmons web page illustrating the infringing terminal block as **Exhibit D** and a photograph of terminal blocks in the possession of counsel as **Exhibit C**.

54.    Defendant is aware of the '817 Patent.  On July 10, 2020, Counsel for Merrill transmitted a letter to Defendant's President Kevin Simmons via certified mail and electronic mail identifying the '817 Patent and attaching a copy of it. Citing "uncanny similarities" between the '817 Patent and the SIMMONS Quick Set Wire Connections Pressure Switch, the letter also asserted infringement of the '817 Patent.   Since receiving this notice of patent rights and its infringement of those rights, Defendant continues to make, use, offer to sell, sell within the United States, and/or import into the United States SIMMONS Quick Set Wire Connections Pressure Switch, including, but not limited to, #SIMS4060 terminal

block.  Defendant's infringement is therefore especially egregious, willful and deliberate.

55.    Upon information and belief, since Defendant became aware of the '817 Patent, Defendant has aided someone other than Defendant in infringing the '817 Patent by providing a nonstaple component to such party knowing the component was especially made or adapted for use in a product infringing the '817 patent.

56.    Defendant's provision of such nonstaple component to such party knowing the component was especially made or adapted for use in a product infringing the '817 patent constitutes contributory infringement of the '817 Patent.

57.    Upon information and belief, since Defendant became aware of the '817 Patent, Defendant has aided, instructed, or otherwise acted with the intent to cause acts by someone other than Defendant, such as Defendant's customers, known to infringe at least Claim 1 of the '817 Patent, by using or selling the SIMMONS Quick Set Wire Connections Pressure Switch, including, but not limited to, #SIMS4060 terminal block.  Defendant's actions therefore constitute inducement to infringe the '817 Patent.

58.    As a direct and proximate result of Defendant's infringement of the '817 Patent, Plaintiff has suffered and continues to suffer damages.

59.     Plaintiffs have no adequate remedy at law and will be irreparably injured unless Defendant's acts of infringement are enjoined by this Court.

## COUNT II
## INFRINGEMENT OF TRADE DRESS - 15 U.S.C. § 1125(a)

60.     Plaintiff realleges and incorporates by reference Paragraphs 1–59 as if set forth fully herein.

61.     Since at least the year 2018, Merrill has continuously and pervasively used the MTB Trade Dress.

62.     By virtue of its substantially exclusive use of the MTB Trade Dress, Merrill owns a valid and protectable interest in the MTB Trade Dress.

63.     Since 2018, Merrill has spent thousands of dollars just in advertising alone in promotion of pressure switches sold and/or offered for sale in association with the MTB Trade Dress.

64.     Since 2018, Merrill has sold tens of thousands of pressure switches bearing the MTB Trade Dress, totaling hundreds of thousands of dollars in sales.

65.     Through the promotion, advertisement, marketing, and sale of goods under the MTB Trade Dress, the consuming public has come to recognize that the MTB Trade Dress indicates a common origin of goods and services.

66.     Upon information and belief, Defendant exercised joint control over, and has acted in concert and participated in, the decision to use the Infringing

Trade Dress, and has induced, cooperated, lent aid, and encouraged use of the same. Such actions constitute use of colorable imitations of Merrill's MTB Trade Dress in connection with the advertising or sale of unauthorized goods in commerce.

67.    Defendant's conduct creates a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Merrill, or as to the origin, sponsorship, or approval of Defendant's products by Merrill. Defendant's conduct is likely to induce consumers to believe, contrary to fact, that Defendant's terminal blocks bearing the Infringing Trade Dress are sponsored, endorsed, approved by, or connected with Merrill.

68.    Defendant's conduct is without Merrill's permission or authority. Upon information and belief, on or about December 3-6, 2018, Defendant Simmons viewed the MTB Trade Dress at least at a Merrill trade booth as Merrill was exhibiting products incorporating the MTB Trade Dress at the National Ground Water Association Groundwater Expo in Las Vegas. Upon information and belief, Defendant thereby acquired actual knowledge of Merrill's prior and senior rights in the MTB Trade Dress. As a result, Defendant has committed its infringement with full knowledge of Merrill's rights in the MTB Trade Dress. Thus, Defendant has willfully, deliberately, and maliciously engaged in the described acts with an intent

to injure Merrill and to deceive the public.

69.    Defendant's conduct has been and is being committed with the intent and purpose of appropriating and trading upon the goodwill and reputation associated with Merrill's MTB Trade Dress. Such acts have damaged, impaired, and diluted that part of Merrill's goodwill symbolized by its well-known MTB Trade Dress, to Merrill's immediate and irreparable harm.

70.    Defendant's unauthorized use of the Infringing Trade Dress, which is confusingly similar to Merrill's MTB Trade Dress, in connection with and to identify its terminal blocks, constitutes trade dress infringement in violation of 15 U.S.C. § 1125(a). Upon information and belief, Defendant has profited from this infringement.

71.    Defendant's conduct has caused damage to Merrill in an amount to be determined at trial, and unless restrained, will continue to seriously and irreparably impair further the value of the MTB Trade Dress, for which there is no adequate remedy at law.

72.    In light of the foregoing, Merrill is entitled to injunctive relief prohibiting Defendant from using the Infringing Trade Dress, or any trade dress confusingly similar to Merrill's MTB Trade Dress for any purpose, and to recover from Defendant all damages, including attorneys' fees, that Merrill has sustained

and will sustain as a result thereof, in an amount not yet known, as well as the costs of this action.

## COUNT III
## COMMON LAW TRADE DRESS INFRINGMENT

73.     Plaintiff realleges and incorporates by reference Paragraphs 1–72 as if set forth fully herein.

74.     Defendant's activities alleged herein above in relation to 15 U.S.C. § 1125(a) have violated Merrill's trade dress rights under the common law.

75.     Upon information and belief, Defendant has profited from this infringement.

76.     As a direct result of Defendant's actions, Defendant has been unjustly enriched through fraudulent conversion to its own profits of Merrill's goodwill and its rights in the MTB Trade Dress.

77.     In light of the foregoing, Merrill is entitled to injunctive relief prohibiting Defendant from using the Infringing Trade Dress, or any mark or trade dress confusingly similar to Merrill's MTB Trade Dress for any purpose, and to recover from Defendant all damages, including attorneys' fees, that Merrill has sustained and will sustain as a result thereof, as well as the costs of this action.

**COUNT IV**
**FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION,**
**15 U.S.C. § 1125(a)**

78.     Plaintiff realleges and incorporates by reference Paragraphs 1-77 as if set forth fully herein.

79.     Defendant's actions as alleged herein constitute use in commerce of certain trade dress and false designations of origin in connection with the sale and advertising of unauthorized goods.

80.     Defendant's conduct creates a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Merrill, or as to the origin, sponsorship, or approval of Defendant's products by Merrill.

81.     Defendant's conduct is likely to induce consumers to believe, contrary to fact, that Defendant's terminal blocks bearing the Infringing Trade Dress are sponsored, endorsed, approved by, or connected with Merrill.

82.     Defendant's conduct is without Merrill's permission or authority.

83.     Upon information and belief, by virtue of Defendant Simmons viewing the MTB Trade Dress on or about December 3-6, 2018, at least at a Merrill trade booth at the National Ground Water Association Groundwater Expo in Las Vegas, Defendant had actual knowledge of Merrill's prior and senior rights in the MTB

Trade Dress. As a result, Defendant has committed its infringement with full knowledge of Merrill's rights in the MTB Trade Dress. Thus, Defendant has willfully, deliberately, and maliciously engaged in the described acts with an intent to injure Merrill and to deceive the public.

84.    Defendant's use of the Infringing Trade Dress, without authority from Merrill, in connection with and to identify its goods, where the Infringing Trade Dress is confusingly similar to Merrill's MTB Trade Dress as set forth above, constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

85.    Upon information and belief, Defendant has profited from this infringement.

86.    This is an exceptional case under 15 U.S.C. § 1117(a).

87.    Defendant's conduct has caused damage to Merrill in an amount to be determined at trial, and unless restrained, will continue to seriously and irreparably impair further the value of the MTB Trade Dress, for which there is no adequate remedy at law.

88.    In light of the foregoing, Merrill is entitled to injunctive relief prohibiting Defendant from using the Infringing Trade Dress, or any trade dress confusingly similar to Merrill's MTB Trade Dress for any purpose, and to recover

from Defendant all damages, including attorneys' fees, that Merrill has sustained and will sustain as a result thereof, in an amount not yet known, but which circumstances warrant trebling pursuant to 15 U.S.C. § 1117, as well as the costs of this action.

## COUNT V
## STATE COMMON LAW - UNFAIR COMPETITION

89.    Plaintiff realleges and incorporates by reference Paragraphs 1-88 as if set forth fully herein.

90.    Defendant's conduct alleged herein constitutes trade dress infringement and false designation of origin under 15 U.S.C. § 1125(a).

91.    Defendant's conduct constitutes palming off, both directly or indirectly, its terminal blocks as the terminal blocks of Merrill.

92.    Defendant's acts of palming off its terminal blocks as Merrill's terminal blocks have been intentional.

93.    Defendant's acts of palming off its terminal blocks as Merrill's terminal blocks constitutes willful and deliberate unfair competition in wanton disregard of Merrill's valuable intellectual property rights.

94.    The natural consequence of Defendant's activities creates probable confusion in the minds of customers in the terminal block industry as to the terminal blocks in question.

95.     Upon information and belief, Defendant has profited from this unfair competition.

96.     Defendant's conduct has directly and proximately caused and will continue to cause Merrill substantial and irreparable injury, including customer confusion, injury to its reputation, and diminution in value of its intellectual property, and unless restrained, will continue to seriously and irreparably impair further the value of Merrill's MTB Trade Dress, for which there is no adequate remedy at law.

97.     In light of the foregoing, Merrill is entitled to an injunction, under Iowa's state common law of unfair competition, restraining Defendant from engaging in further such unlawful conduct, as well as restitution of those amounts unlawfully obtained by Defendant through its wrongful conduct.

## JURY DEMAND

In accordance with Federal Rules of Civil Procedure 38 and 39, Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in their favor and against Defendant, and that Plaintiff be granted the following relief:

A.   Issuance of a preliminary injunction and a permanent injunction restraining Simmons, its officers, agents, servants, attorneys and all persons in active concert or participation with Simmons from further acts of infringement of the '817 Patent, infringement of the MTB Trade Dress, and unfair competition;

B.   Entry of an award of damages sufficient to compensate Plaintiff for Simmons' infringement and unfair competition;

C.   Entry of an award of increased damages in an amount not less than three times the damages found or assessed by this Court for Simmons' willful and wanton acts of infringement;

D.   Order Simmons to pay all costs, attorneys' fees, and applicable interests; and

E.   Grant Plaintiff such other and further relief as this Court shall deem appropriate.

Dated: October 20, 2020                    Respectfully submitted,

                                           By: */s/ Steven G. Hill*
                                                Steven G. Hill
                                                Georgia Bar No. 354658
                                                Martha L. Decker
                                                Georgia Bar No. 420867
                                                HILL, KERTSCHER & WHARTON, LLP

3350 Riverwood Parkway
Atlanta, Georgia 30339
Tel.: (770) 953-0995
Fax: (770) 953-1358
sgh@hkw-law.com
md@hkw-law.com

Brett J. Trout, AT0008075
*Admitted Pro Hac Vice*
BRETT J. TROUT, P.C.
516 Walnut St.
Des Moines, IA 50309
Tel: (515)280-1939
Fax: (515)280-7114
trout@BrettTrout.com

ATTORNEYS FOR PLAINTIFF
MERRILL MANUFACTURING
COMPANY

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| Merrill Manufacturing Company, an Iowa Corporation | |
| Plaintiff, | CIVIL CASE NO. 1:20-cv-03941-MLB |
| vs. | |
| Simmons Manufacturing Company, a Georgia Corporation | **JURY TRIAL DEMANDED** |
| Defendant. | |

I HEREBY CERTIFY that on the 20th day of October, 2020, I caused to be electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to participants and law firm who are registered CM/ECF users, and will be served by the CM/ECF system.

This 20th day of October, 2020.

By:     */s/ Steven G. Hill*
        Steven G. Hill
        Georgia Bar No. 354658
        *Attorney for Plaintiff*