## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **MERRILL MANUFACTURING COMPANY,** ) | |
| )  Plaintiff; | |
| ) | **Civil Action 1:20-CV-03941-MLB** |
| v.  ) | |
| ) | |
| **SIMMONS MANUFACTURING COMPANY,** ) | |
| ) | |
| )  Defendant. | **Jury Trial Demanded.** |
| ) | |

## DEFENDANT SIMMONS MANUFACTURING COMPANY'S OPENING PATENT CLAIM CONSTRUCTION BRIEF PURSUANT TO LOCAL PATENT RULE 6.5

Submitted by:

Luke Anderson (GA Bar No. 018330)
**Atlanta Technology Law**
(Luke Anderson P.C.)
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338-7702
Telephone   404-991-2241
Facsimile    404-935-0927
E-Mail:      Landerson@atltechlaw.com
***Counsel for Defendant Simmons Manufacturing Company***

## Table of Contents

1.  Introduction and Summary of Arguments .................................................................1

2.  Description of The '817 Patent..............................................................................3

3.  Prosecution History and Prior Art .......................................................................4

4.  Agreed Upon Construction of Surface Shading in the '817 Patent....................5

5.  Legal Authority and Argument.............................................................................5

    a.  Claim Construction for Design Patents ...........................................................5

    b.  The '817 Patent is Invalid Due To Indefiniteness and Lack of Enablement. ..8

    c.  Functionality ..................................................................................................17

        i.  The Wire Lug Portion of the Design is Dictated By Performance And Thus
        Not Ornamental ...............................................................................................18

        ii.  The "L" Shaped Legs of the Wire Connector are Dictated By Function....20

        iii. The '817 Patent Is Invalid Due to Functionality .........................................21

6.  Conclusion...........................................................................................................22

## Supporting Exhibits

Exhibit 1    Declaration of Professor Thomas G. Habetler

Exhibit 2    Curriculum Vitae of Professor Thomas G. Habetler

Exhibit 3    U.S. Design Patent D881,817 (U.S. Design Application No.
             29/682,383)

Exhibit 4    Certified Prosecution History for U.S. Design Application No.
             29/682,383

Exhibit 5    Plaintiff Merrill's Response to Request for Admissions No. 1 to 133
             with Exhibits

Exhibit 6    Plaintiff Merrill's Response to Request for Admissions No. 134 to
             166

Exhibit 7     Plaintiff Merrill's Supplemental Response to Interrogatories with Exhibit

Exhibit 8     Plaintiff Merrill's "End of Summer Switch Special" advertisement – Dkt. 35-2.

Exhibit 9     Plaintiff Documents produced as Merrill 2958 to Merrill 2964

Exhibit 10    Plaintiff Documents produced as Merrill 2966 to Merrill 2994

Exhibit 11    Plaintiff Documents produced as Merrill 2995 to Merrill 3004

Exhibit 12    U.S. Patent No. 5,600,536 entitled "Connector Bar For Load Center Interior Assembly"

Exhibit 13    Plaintiff Merrill's Product covered U.S. Design Patent D881,817 – Dkt. 31-2.

Exhibit 14    *Times Three Clothier, LLC v. Spanx, Inc,* 1-13 cv 2157 (S.D.N.Y. April 29, 2014)

## **Table of Authorities**

### **Cases**

*Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 651 F.3d 1318 (Fed. Cir. 2011) .... 6

*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.,* 501 F.3d 1314 (Fed. Cir. 2007) ........................................................................................................ 8, 20

*Aventis Pharma. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) ...................................................................................................................... 5

*Berry Sterling Corp. v. Pescor Plastics, Inc.,* 122 F.3d 1452 (Fed. Cir. 1997) ...... 18

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989) ........................................................................................ 8, 20

*Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372 (Fed. Cir. 2005) ................... 6

*Contessa Food Prods., Inc. v. Conagra, Inc.,* 282 F.3d 1370 (Fed. Cir. 2002) ........ 9

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) .............. 8, 25

*Ethicon Endo–Surgery Inc. v. Covidien Inc*, 796 F.3d 1312 (Fed. Cir. 2015) .......... 8

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.,* 162 F.3d 1113 (Fed. Cir. 1998) ............................................................................................................... 8

*In re Maatita,* 900 F.3d 1369 (Fed. Cir. 2018) ................................................ 10, 14

*In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988) ............................................................ 5

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117 (Fed.Cir.1993) ................ 8

*Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186 (Fed.Cir.1988) ................................ 17

*MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1581 (Fed. Cir. 2014) ........ 5

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) ................... 9, 13, 14

*OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed.Cir.1997) . 8, 17, 19, 21

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ..........................5

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed.Cir.2010) .......................7, 8

*Sitrick v. Dreamworks, LLC*, 516 F.3d 993 (Fed. Cir. 2008) ....................................9

*Sport Dimension Inc.. Coleman Co,* 820 F.3d 1316 (Fed. Cir. 2016) ......................7

*Takeda Pharma. Co. Ltd. v. Zydus Pharma. USA, Inc.*, 743 F.3d 1359 (Fed. Cir. 2014) ..............................................................................................................6

*Times Three Clothier, LLC v. Spanx, Inc.,* 13 Civ. 7260 (S.D.N.Y. April 29, 2014) ...............................................................................................................15

## Statutes

35 U.S.C. §112 (AIA) .......................................................................... 1, 11

35 U.S.C. §112(a) ...................................................................................12

35 U.S.C. §112(b) .....................................................................................9

35 U.S.C. §171(a) ......................................................................................7

## Other Authorities

MPEP §1503.02 ........................................................................................9

Defendant Simmons Manufacturing Company, ("Simmons") submits this opening claim construction brief regarding U.S. Design Patent No. D881,817 S, (the " '817 Patent") pursuant to Patent L.R. 6.5.

## 1. Introduction and Summary of Arguments

As part of this patent claim construction proceeding the Court is asked to decide (1) if, as a matter of law, the '817 Patent is indefinite (whether the scope of the claim is clear with reasonable certainty) and not enabled (whether the specification sufficiently describes the design to enable an average designer to make the design) because the figures constituting the patent claim are fatally inconsistent and thus the scope of the claim is unclear; and, (2) if the claimed design, or portions of the claimed design for a "Wire Connector", are dictated solely by the article's function and thus not ornamental.

Here, the '817 Patent is invalid due to indefiniteness and lack of enablement under 35 U.S.C. §112 (AIA) because fatal inconsistencies exist in the figures regarding a fundamental part of the claimed invention – the Leg Base. These fatal inconsistencies cause an ordinary observer viewing the drawings as one skilled in the art to guess which of two embodiments constitute the claimed design. The '817 Patent therefore fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention or how to correctly make the claimed design and

thus is invalid.  The '817 Patent and the prosecution history provide no indication how to resolve this inconsistency.  This Court should therefore hold the '817 Patent invalid, as a matter of law, due to indefiniteness and lack of enablement.

The appearance of the Wire Lug portion of the '817 Patent, viewing the entire design, is dictated by its function of quickly and easily attaching an electrical wire. The two holes in the side of the Wire Lug are aligned so that a wire can be passed through them.  The hole at the top of the Wire Lug with a chamfered edge is configured so that a set screw may be inserted then tightened in order to secure a wire in the Wire Lug.  An ordinary designer in the art of Wire Connectors would view the Wire Lug of the Wire Connector to be dictated solely by function rather than ornamental.  The Court should therefore construe the claim of the '817 Patent to identify the Wire Lug as functional.

An ordinary designer viewing the entire design would view the "L" shaped legs to be dictated by the function of the "Wire Connector" rather than ornamental. The "L" shaped leg configuration is common in the prior art and required to conform to the pressure switch.  Alternative configurations to the "L" shaped legs would not function the same way because they would no longer conduct electricity to the portion of the pressure  switch as designed, were it is needed.  It follows that an ordinary designer in the area of "Wire Connectors" would view the "L" shaped legs

as the best configurations for the intended purpose of using the "Wire Connector" shown in the '817 Patent with a pressure switch as designed.  An ordinary designer in the art of Wire Connecters would therefore view the "L" shaped legs of the "Wire Connector" in the '817 Patent to be dictated by function rather than ornamental.  The Court should therefore construe the claim of the '817 Patent to identify the "L" Shaped Legs as functional.

Finally, viewing the entire design, an ordinary designer of wire connectors would view the "Wire Connector" in the '817 Patent to be dictated primarily by its function.  This Court should therefore construe the claim of the '817 Patent to be dictated by function and thus invalid.

## 2.  Description of The '817 Patent

The '817 Patent, entitled "Wire Connector," claims an "ornamental design for a wire connector as shown and described" in seven attached figures. '817 Patent, Exhibit 3 hereto.  The '817 Patent contains brief descriptions of each of the seven figures, which mainly serve to identify the



*Fig. 1 from the '817 Patent*

perspective from which the figures are drawn (*e.g.*, "Fig. 1 is a perspective view of a wire connector showing my new design").  *Id.*

3

### 3. Prosecution History and Prior Art

The application for the '817 Patent was filed with the United States Patent and Trademark Office ("USPTO") on March 5, 2019 and thus is governed by the American Invents Act (AIA) amendments to the Patent Act.. [1]  Declaration of Thomas Habetler, ("Habetler Dec.") ¶19, Exhibit 1 hereto. The USPTO issued an Office Action on February 2, 2020 objecting to the application because the description of the figures needed to be amended for clarity and accuracy and the title "Wire Connector" was not consistent with the claim directed to a "wire terminal." Habetler Dec. ¶ 20.  Thereafter, on February 17, 2020, the application was amended to address these issues and a Notice of Allowability for A Design Application was issued on March 11, 2020.  Habetler Dec. ¶¶ 21-22. The USPTO did not issue any reasons for allowance.  *Id.*  The Issue Fee was paid on March 12, 2020 and the '817 Patent issued on April 21, 2020.  Less than 90-days after the '817 Patent issued, this infringement action was filed July 10, 2020.  Dkt. 1.

During the pendency of the application for the '817 Patent the applicant submitted non-patent prior art materials that discusses the functionality of

---

[1] Plaintiff Merrill Manufacturing Company's Responses and Objections to Defendant Simmons Manufacturing Company's Requests to Admit Nos. 1 to 133 served on December 20, 2020, ("RFA), Nos 1-2.

mechanical wire connectors and prior art devices with substantially similar "L" shaped leg designs. Habetler Dec. ¶¶23-25.

### 4. Agreed Upon Construction of Surface Shading in the '817 Patent.

The Parties have agreed that the '817 Patent uses surface shading to show the contour and flat surface areas of the claimed article.  *See* Dkt. 75-1 (Joint Claim Construction Statement, Exhibit A).  This stipulation is particularly important for claim construction purposes because, as explained herein,  the surface shading on the Wire Lug in Figure 2 extends the full length of the Wire Lug - from the top to the bottom.  Thus, Figure 2 shows a curved surface where Leg Base should be.

### 5. Legal Authority and Argument

#### a. Claim Construction for Design Patents

It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude. *Aventis Pharma. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*)). "Design patents have almost no scope" and are "limited to what is shown in the application drawings." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988); *accord MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, n 1 (Fed. Cir. 2014) (quoting *Mann* and noting that "in practice, our focus [has been] on the 'overall visual appearance' of a claimed

design"). In construing a patent claim, which is a question of law, a court "should look first to the intrinsic evidence of record, *i.e*., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 651 F.3d 1318, 1336 (Fed. Cir. 2011) (citation omitted). A court may consider extrinsic evidence, such as expert and inventor testimony, dictionaries, and treatises, but such extrinsic evidence is "generally of less significance than the intrinsic record." *Takeda Pharma. Co. Ltd. v. Zydus Pharma. USA, Inc.*, 743 F.3d 1359, 1363 (Fed. Cir. 2014).  If the meaning of the claim is clear from the intrinsic evidence alone, resort to extrinsic evidence is improper. *Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1377 (Fed. Cir. 2005).

Under 35 U.S.C. § 171(a), patent protection is available for a "new, original and ornamental design for an article of manufacture. . . ."  Accordingly, a "design patent, unlike a utility patent, limits protection to the ornamental design of the article." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010). To be "ornamental," and thus qualify for protection, "a design must present an aesthetically pleasing appearance that is not dictated by function alone, and must satisfy the other criteria of patentability." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989).

The Federal Circuit "has held that trial courts have a duty to conduct claim construction in design patent cases, as in utility patent cases, the court has not prescribed any particular form that the claim construction must take." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). To the contrary, the Federal Circuit has recognized that design patents "typically are claimed as shown in drawings," and that claim construction "is adapted accordingly." *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.,* 501 F.3d 1314, 1319 (Fed. Cir. 2007); *see also Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.,* 162 F.3d 1113, 1116 (Fed. Cir. 1998). For that reason, the Federal Circuit has not required that the trial court attempt to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents. *See Contessa Food Prods., Inc. v. Conagra, Inc.,* 282 F.3d 1370, 1377 (Fed. Cir. 2002) (approving district court's construction of the asserted claim as meaning "a tray of a certain design as shown in Figures 1-3").

A district court may use claim construction to help guide the fact finder through issues that bear on claim scope. *Sport Dimension Inc.. Coleman Co,* 820 F.3d 1316, 1320 (Fed. Cir. 2016). The Federal Circuit has blessed claim constructions, for example, where the court helped the fact finder "distinguish[ ] between those features of the claimed design that are ornamental and those that are

purely functional." *Id*. (citing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed.Cir.1997)). Of course, a design patent cannot claim a purely functional design—a design patent is invalid if its overall appearance is "dictated by" its function. *Id*. But as long as the design is not primarily functional, "the design claim is not invalid, even if certain elements have functional purposes." *Ethicon Endo–Surgery Inc. v. Covidien Inc*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed.Cir.2010) ). That is because a design patent's claim protects an article of manufacture, which "necessarily serves a utilitarian purpose." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed.Cir.1993). So a design may contain both functional and ornamental elements, even though the scope of a design patent claim "must be limited to the ornamental aspects of the design." *Ethicon Endo–Surgery*, 796 F.3d at 1333. "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods.*, 122 F.3d at 1405.

### b.  The '817 Patent is Invalid Due To Indefiniteness and Lack of Enablement.

The '817 Patent is invalid due to indefiniteness and lack of enablement under 35 U.S.C. §112 (AIA) because fatal inconsistencies exist in the figures regarding a fundamental part of the claimed invention – the Leg Base.   These fatal

inconsistencies cause an ordinary observer viewing the drawings as one skilled in the art to guess which of two embodiments are the claimed design: a first embodiment with perspective, top and bottom views given by Figures 1, 4, and 5 respectively; or, a second embodiment with a rear view given by Figure 2. The '817 Patent therefore fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention or how to correctly make the claimed design and thus is invalid. *See* Habetler Dec. ¶¶ 31 - 46.

Indefiniteness and enablement are questions of law for the Court to decide. *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008). Design patent drawings must be clear and complete, leaving nothing to conjecture. *See* MPEP §1503.02. The requirement that the scope of a patent claim is clear with reasonable certainty is set forth in 35 U.S.C. §112(b) thusly: The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention. "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Design patents are subject to the same definiteness requirements as utility patents. *In re Maatita,* 900 F.3d 1369, 1375-76 (Fed. Cir.

2018). The purpose of requiring definiteness "is to ensure that the disclosure is clear enough to give potential competitors (who are skilled in the art) notice of what design is claimed—and therefore what would infringe." *Id*. at 1376. "Thus, a design patent is indefinite under § 112 if one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure." *Id*. at 1377.

Moreover, the requirement that the patent specification is enabling is set forth in 35 U.S.C. §112(a) thusly:  "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . ." There is often little difference in the design patent context between the concepts of definiteness (whether the scope of the claim is clear with reasonable certainty) and enablement (whether the specification sufficiently describes the design to enable an average designer to make the design.).  *In re Maatita*, 900 F.3d 1369, 1375-76 (Fed. Cir. 2018).

In the first embodiment - perspective, top and bottom views given by Figures 1, 4, and 5 – a Leg Base of variable width that matches the width of the Wire Lug at

one end and the width of the Leg Extension at the other end is claimed.  Habetler

Dec. ¶¶35-37.



*Figure 4 of the '817 Patent showing a top view.*



*Figure 5 of the '817 Patent showing a bottom view.*

11

In the second embodiment - a rear view given by Figure 2 – the surface lines on the Wire Lug extend from the top of the Wire Lug to the bottom of the Wire Lug indicating that there is no physical structure (no Leg Base) present blocking the observers view.  Habetler Dec. ¶38.



Surface shading on the Wire Lug extends from the top to the bottom of the Wire Lug.  The Leg Base, if present,  would obscure the view of the surface shading.

Thickness of the leg extension.

The '817 Patent and the prosecution history provide no guidance to one skilled in the art to select one of the two embodiments while rejecting the other embodiment. Habetler Dec. ¶43.  Thus, one of ordinary skill in the art, is not able to look to the consistent views of Figures 1, 4, and 5 to determine the position and shape of the

Leg Base without disregarding Figure 2.  *Id*. Conversely, one of ordinary skill in the art could not look at Figure 2 to determine the position and shape of the Leg Base without disregarding Figures 1, 4, and 5. *Id*.  The '817 Patent and the prosecution history therefore fails to inform with reasonable certainty those skilled in the art what the scope of the claimed design actually is.  *Nautilus, Inc.,* 572 U.S. at 901 ("[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.")

The location and design of the Leg Base is particularly important here because the prior art of record, as shown below, discloses the Wire Lug and "L" shaped configuration of the Wire Connector.  Habetler Dec. ¶45.  Thus, the design of the Leg Base is a potentially distinguishing factor over the prior art of record.  *Id*.  It follows that clarity of the location and design of the Leg Base, as it has been inconsistently presented in two distinct embodiments, is needed to properly evaluate the patentability of the '817 Patent in light of the prior art – an evaluation this Court will be called upon following claim construction.  *Id.*

13

| Prior Art of Record – Showing the Wire Lug and "L" Shaped Legs | Fig. 7 of the '817 Patent – left side elevation view |
|---|---|
|  | |

Here, one skilled in the art can only guess as to which of the embodiments shown in the '817 Patent is correct.  The '817 Patent and the prosecution history provide no guidance.   It follows that a designer of ordinary skill in the art, viewing the '817 Patent as would an ordinary observer, would not understand or be able to determine the scope of the design claimed in the '817 Patent with reasonable certainty due to the inconsistency between the figures. Habetler Dec. ¶46.  The '817 Patent should therefore be held invalid due to indefiniteness and lack of enablement. *Nautilus*, 572 US at 901; *In re Maatita*, 900 F.3d at 1375-76.

14

In *Times Three Clothier, LLC v. Spanx, Inc.,* 13 Civ. 7260 (S.D.N.Y. April 29, 2014) the court confronted a similar issue when attempting to construe the scope of two design patents directed to women's garments.  The design patents asserted in the *Time Three Clothier* case had inconsistent figures, just as the '817 Patent does. In the first of the two indefinite design patents, figures (Figs. 1 and 2) of the '558 Patent showed a first ornamental line below the bust as a straight line and figures (Figs. 5 and 6) showed a slanted line angled up at approximately 30 degrees as the line moves from the back of the garment up to the front. *Id* at * 18-19.  The court held the '558 Patent invalid due to indefiniteness because, it reasoned, that the first ornamental line is a fundamental part of the claimed design, and replacing the straight line with the angled line or vice-versa would materially alter the subject matter covered by the exclusive rights of the patent.  *Id*. at 19.



'558 Patent Figures 1-6

Fig. 1   Fig. 2   Fig. 3   Fig. 4   Fig. 5   Fig. 6

In the second of the two indefinite design patents, Figure 2 of the '384 Patent was inconsistent with the other figures because it "depicts slightly more of the top back

portion underneath the arm portion that is shown in the other figures." *Id.* at 21. In holding the '384 Patent invalid duet to indefiniteness the court reasoned that "resolving this inconsistency in favor of the design depicted by the '384 Patent's back view, as opposed to the design depicted by the side views, would materially alter the subject matter covered by the exclusive rights of the patent. *Id.* at 22.



'384 Patent Figures 1-6

Fig. 1     Fig. 2     Fig. 3     Fig. 4     Fig. 5     Fig. 6

The fatal inconsistencies presented in the *Times Three Clothier* case are minor and difficult to detect based on an initial review. Even so, the court determined that these inconsistencies, when evaluated from the perspective of one of ordinary skill, were significant enough to render these design patents indefinite. Here, the '817 Patent suffers from similar fatal inconsistencies and should be held invalid due to indefiniteness and non-enablement.

### c. Functionality

"The chief limitation on the patentability of designs is that they must be primarily ornamental in character. If the design is dictated by performance of the article, then it is judged to be functional and ineligible for design patent protection." *Arminak and Assoc. v. Saint-Gobain Calmar*, 501 F.3d 1314, 1319 (Fed. Cir. 2007)(Internal citations omitted). To be "ornamental," and thus qualify for protection, "a design must present an aesthetically pleasing appearance that is not dictated by function alone, and must satisfy the other criteria of patentability." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989).

A design patent only protects the novel, ornamental features of the patented design. *OddzOn Products, Inc.* 112 F.3d at 1405; *See Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed.Cir.1988) ("[I]t is the non-functional, design aspects that are pertinent to determinations of infringement.") (footnote omitted). Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent. *Id*.

When evaluating the functionality of a design the Federal Circuit has instructs that appropriate consideration be directed to: (a) whether the protected design

17

represents the best design; (b) whether alternative designs would adversely affect the utility of the specified article; (c) whether there are any concomitant utility patents; (d) whether the advertising touts particular features of the design as having specific utility; and, (e) whether there are any elements in the design or an overall appearance clearly not dictated by function. *Berry Sterling Corp. v. Pescor Plastics, Inc.,* 122 F.3d 1452, 1456 (Fed. Cir. 1997).

### i.   The Wire Lug Portion of the Design is Dictated By Performance And Thus Not Ornamental

The purpose of the Wire Lug is to secure a wire used to conduct electricity into the "Wire Connector". Habetler Dec. ¶49. Plaintiff has promoted the functionality of the Wire Lug in its own advertisements with statements such as: "Heavy brass wire connections with stainless steel set screws inside brass tube – can hold No. 8 wire.", Habetler Dec. ¶50; and, "heavy brass wire connectors with set screws inside brass tube – wires will not slip off screw" and that the "wire connections can hold No. 8 wire easily.", Habetler Dec. ¶51. Plaintiff has also promoted the "quick" and easy wire connection that the Wire Lug provides when, in its own words, it describes the functionality of the Wire Lug as "Quick wire connections with stainless steel set screws inside brass tube – can hold No. 8 wire." *Id.* The prosecution history also contains a Home Depot advertisement promoting

18

a mechanical connector with an identical "Wire Lug" that makes "easy work of connecting #6 standard wire to a connector."  Habetler Dec. ¶52.

The functionality of the "Wire Lug" is also discussed in a prior art utility patent – U.S. Patent No. 6,600,536, (the " '536 Patent").  Habetler Dec. ¶¶ 53 – 58.  The '536 Patent discusses how the wire lug attaches a wire to the lug, Habetler Dec. 55, and more specifically, how a wire or other conductor is inserted into the lug, then a set screw is tightened on the wire or other conductor, and how electrical current is then conducted through the lug.  *Id.*

The appearance of the Wire Lug portion of the '817 Patent is dictated by its function of quickly and easily attaching an electrical wire.  The two holes in the side of the Wire Lug are aligned so that a wire can be passed through them.  The hole at the top of the Wire Lug with a chamfered edge is configured so that a set screw may be inserted then tightened in order to secure a wire in the Wire Lug.  Habetler Dec. ¶57.  An ordinary designer in the art of Wire Connectors would therefore view the Wire Lug portion of the Wire Connector to be dictated solely by function rather than ornamental.  Habetler Dec. ¶58.  The Court should therefore construe the claim of the '817 Patent to identify the Wire Lug as functional.  *OddzOn Prods.*, 122 F.3d at 1405. ("Where a design contains both functional and non-functional elements, the

scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.")

## ii.    The "L" Shaped Legs of the Wire Connector are Dictated By Function

The '817 Patent has an inverted "L" shape leg configuration consisting of the Leg Base and Leg Extension.  The 90° angle between the Leg Base and Leg Extension allows it to conform to the terminal block. This configuration is necessary for the "Wire Connector" to conduct electricity from a wire to the pressure switch and from the pressure switch to a wire.  Habetler Dec. ¶59.

The conducting wire is attached to the "Wire Lug", electricity passes through the "Wire Connector";  the lower of the two holes in the Leg Extension is where a fastener is inserted that attaches the Wire Connector to the pressure switch.  Then a conductive metal is placed in the top of the two holes in the Leg Extension.  The function of the "Wire Connector" shown in the '817 Patent is to conduct electricity from the Wire Lug through the Leg Extension to the pressure switch.  Habetler Dec. ¶61.

An ordinary designer would view the "L" shaped legs to be dictated by the function of the "Wire Connector" rather than ornamental.  Moreover,  as is seen in the prior art, the "L" shaped leg configuration is common and required to conform to the pressure switch.  Alternative configurations to the "L" shaped legs would not

function the same way because they would no longer conduct electricity to the portion of the pressure  switch as designed, were it is needed.  It follows that an ordinary designer in the area of "Wire Connectors" would view the "L" shaped legs as the best configurations for the intended purpose of using the "Wire Connector" shown in the '817 Patent with a pressure switch as designed.  Habetler Dec. ¶62.  Accordingly, an ordinary designer in the art of Wire Connecters views the "L" shaped legs of the "Wire Connector" in the '817 Patent to be dictated by function rather than ornamental.  Habetler Dec. ¶63.  The Court should therefore construe the claim of the '817 Patent to identify the "L" Shaped Legs as functional.  *OddzOn Prods.*, 122 F.3d at 1405. ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.")

### iii.    The '817 Patent Is Invalid Due to Functionality

The '817 Patent is directed to a primarily functional, not ornamental, article and thus should be held invalid due to functionality.  The design claimed in the '817 Patent functions to easily secure an electrical wire into the Wire Lug (as discussed above) and the "L" Shaped Legs conform to the terminal block (as discussed above) to transmit electricity to a specific location on the terminal block. Habetler Dec. ¶65.  Viewing the design claimed in the '817 Patent in its entirety, an ordinary designer

in the art of Wire Connecters would view the "Wire Connector" in the '817 Patent to be dictated by function rather than ornamental. *Id*. The "Wire Connector" claimed in the '817 Patent is therefore primarily functional not ornamental. *Id*. This Court should therefore construe the claim of the '817 Patent to be dictated by function and thus invalid. *Egyptian Goddess, Inc.*, 543 F.3d at 668 (A design patent cannot claim a purely functional design—a design patent is invalid if its overall appearance is "dictated by" its function.)

## 6. Conclusion

Defendant Simmons Manufacturing Company respectfully prays that this Court:

Adopt and follow the Parties agreed upon constructions for surface shading to show character and/or contour of the article as set forth in Exhibit A to the Joint Claim Construction Statement (Dkt. 75-1);

Hold the '817 Patent invalid due to indefiniteness and non-enablement because the scope of the patent claim is unclear to one skilled in the art due to the fatally inconsistent depiction (or omission) of the Leg Base; and,

Hold that the '817 Patent is invalid because it is directed to a primarily functional article, not an ornamental one, or in the alternative, hold that the Wire Lug and "L" Shaped Legs, are primarily functional not ornamental.

Respectfully submitted this 17th day of May 2021.

/s/ Luke Anderson
Luke Anderson (GA Bar No. 018330)
**Atlanta Technology Law**
(Luke Anderson P.C.)
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338-7702
Telephone    404-991-2241
Facsimile    404-935-0927
E-Mail:      Landerson@atltechlaw.com
***Counsel for Defendant Simmons***
***Manufacturing Company***

---

**Local Rule 7.1(D) Certification**

The above signed counsel hereby certifies that the within and foregoing paper complies with Local Rule 7.1(D) since it was prepared in Times New Roman, 14 point font.

---

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| **MERRILL MANUFACTURING COMPANY,** | ) ) ) | |
| Plaintiff; | ) | |
| v. | ) | **Civil Action 1:20-CV-03941-MLB** |
| **SIMMONS MANUFACTURING COMPANY,** | ) ) ) | |
| Defendant. | ) ) | **Jury Trial Demanded.** |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2021, I electronically filed the within and foregoing **DEFENDANT SIMMONS MANUFACTURING COMPANY'S OPENING PATENT CLAIM CONSTRUCTION BRIEF PURSUANT TO LOCAL PATENT RULE 6.5** with the Clerk of Court using the CM/ECF system which will automatically send an email notification of such filing to the following attorneys of record (if registered for CM/ECF service), mailed the within and forgoing to counsel of record as set forth below, by U.S. mail postage prepaid, and by electronic mail as set forth below:

**Brett J. Trout, Esq.**
Brett J. Trout, P.C.
516 Walnut Street
Des Moines, IA 50309
Trout@BrettTrout.com

**Steven G. Hill, Esq.**
**Martha L. Decker, Esq.**
Hill, Kertscher & Wharton, LLP
3350 Riverwood Parkway, Suite 800
Atlanta, GA 30339
sgh@hkw-law.com
md@hkw-law.com

/s/ Luke Anderson
Luke Anderson
(GA Bar No. 018330)