## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTICT OF GEORGIA
## ATLANTA DIVISION

Merrill Manufacturing Company, an
Iowa Corporation

       Plaintiff,

vs.

Simmons Manufacturing Company, a
Georgia Corporation

       Defendant.

C.A. NO. 1:20-cv-03941-MLB

**JURY TRIAL DEMANDED**

## PLAINTIFF MERRILL MANUFACTURING COMPANY'S
## <u>OPENING CLAIM CONSTRUCTION BRIEF</u>

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ..............................................................iv-vi

EXHIBITS ...............................................................................vii

I.   Background Regarding Wire Connectors ............................................1

II.  Overview of the 817 Patent....................................................4

III. Issues Presented ............................................................6

IV.  Argument.......................................................................8

    A.   Simmons' Perceived Inconsistency Between Patent Drawings
        Does Not Rise to a Showing of Patent Invalidity by Clear
        and Convincing Evidence.........................................................8

        1.   The 817 Patent is Definite ....................................8

        2.   Simmons' Argument that the 817 Patent is not Enabled is
            Inappropriate at the Claim Construction Stage......................12

    B.   The Court Should Construe the Claim Solely by Reference
        to the Illustrations in the Patent Drawings ...................................15

        1.   The Court Need Not Provide a Detailed Verbalized
            Construction of the 817 Patent................................15

        2.   The Claim Protects the Ornamental Design of the Wire
            Connector as a Whole, and the Court Should Therefore
            Reject Simmons' Attempt to Parse Some of its Features........17

ii

3.    Simmons' Proffered Construction is Incorrect: the Wire Lug is not "Merely Functional" ............................................18

4.    The Inverse "L" Leg Base and Leg Extension are not "Merely Functional" ..............................................................................20

5.    Simmons' Proffered Construction is Incorrect: the Two Holes Depicted in the Leg Extension are not "Merely Functional" ...........................................................................22

# TABLE OF AUTHORITIES

*Cases:*                                                        **PAGE**

*AK Steel Corp. v. Sollac,*
  344 F.3d 1234 (Fed. Cir. 2003)...................................................13

*ALZA Corp. v. Andrx Pharm., LLC,*
  603 F.3d 935 (Fed. Cir. 2010)...........................................12,13,14

*Best Lock Corp. v. Ilco Unican Corp.,*
  94 F.3d 1563 (Fed. Cir. 1996)...................................................20

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
  489 U.S. 141 (1989) ................................................................20

*Contessa Food Prods., Inc. v. Conagra, Inc.,*
  282 F.3d 1370 (Fed. Cir. 2002).................................................15

*Crocs, Inc. v. Int'l Trade Comm'n,*
  598 F.3d 1294 (Fed. Cir. 2010).................................................15

*Deckers Outdoor Corporation v. Romeo & Juliette, Inc.,*
  2:15-cv-02812-ODW, 2016 WL 7017219 (C.D. Cal. Dec. 1, 2016).............*passism*

*Deckers Outdoor Corp. v. Rue Servs. Corp.,*
  13-CV-06303-JVS, 2014 WL 12588481 (C.D. Cal. Aug. 29, 2014) .............17

*Dobson v. Dornan,*
  118 U.S. 10 (1886)...................................................................15

*Durel Corp. v. Osram Sylvania Inc.,*
  256 F.3d 1298 (Fed. Cir.  2001).................................................13

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
  543 F.3d 665 (Fed. Cir. 2008)..............................................16,17,18

*Cases*: **PAGE**

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012)......................................................................8

*Genentech Inc. v. Novo Nordisk A/S*,
  108 F.3d 1361 (Fed. Cir. 1997)..................................................................13

*Hupp v. Siroflex of Am., Inc.*,
  122 F.3d 1456 (Fed. Cir. 1997)................................................................. 18

*In re Maatita*,
  900 F.3d 1369 (Fed. Cir. 2018)...................................................................8

*In re Vaeck*,
  947 F.2d 488 (Fed. Cir. 1991)...................................................................13

*In re Wands*,
  858 F.2d 731 (Fed. Cir. 1988)...................................................................14

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
  988 F.2d 1117 (Fed. Cir.), *cert. denied*, 510 U.S. 908 (1993)........................19

*Liquid Dynamics Corp. v. Vaughan Co.*,
  449 F.3d 1209 (Fed. Cir. 2006)..............................................................13, 14

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898, 134 S.Ct. 2120 (2014) ..........................................................8

*Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*,
  992 F. Supp. 2d 1214 (S.D. Fla. 2014)........................................................16

*Rapha Prod. Grp., LLC v. Skullcandy, Inc.*,
  1:10-CV-3388-JEC, 2012 WL 13005372 (N.D. Ga. Aug. 13, 2012).............18

*Spectra-Physics, Inc. v. Coherent, Inc.*,
  827 F.2d 1524 (Fed. Cir. 1987)..................................................................13

*Cases*:                                                              <u>**PAGE**</u>

*Sport Dimension, Inc. v. Coleman Co.*,
  543 F.3d 680; *accord* 820 F.3d 1316 (Fed. Cir. 2016) ..................................17, 18

*Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*,
  308 F.3d 1167 (Fed. Cir. 2002) ....................................................................13, 14

*Weber-Stephen Prod. LLC v. Sears Holding Corp.*,
  13-cv-01686, 2015 WL 9304343 (N.D. Ill. Dec. 22, 2015) ..........................9


<u>*Other:*</u>

*Manual of Patent Examining Procedure* § 1503.01 (8th ed. 2006).................. 15


<u>*Statutes:*</u>

35 U.S.C. § 112 .................................................................................8,12,13

**TABLE OF EXHIBITS**

**EXHIBIT A:**      U.S. Pat. No. D811,817 (Habetler Dep., Ex. 5)
**EXHIBIT B:**      Excerpts to April 15, 2021 Dep., Thomas Habetler, Ph.D.
**EXHIBIT C:**      U.S. Pat. No. 6,910,912 (Hung) (Habetler Dep., Ex. 6)
**EXHIBIT D:**      U.S. Pat. No. 7,044,776 (King et al.) (Habetler Dep., Ex. 8)
**EXHIBIT E:**      U.S. Pat. No. 7,384,297 (King et al.) (Habetler Dep., Ex.9)
**EXHIBIT F:**      U.S. Pat. No. 6,953,373 (Vos) (Habetler Dep., Ex. 7)
**EXHIBIT G:**      U.S. Pat. No. 9,048,555 (Chou) (Habetler Dep., Ex. 13)
**EXHIBIT H:**      U.S. Pat. No. 7,867,002 (Lin et al.) (Habetler Dep., Ex. 12)
**EXHIBIT I:**      U.S. Pat. No. 9,425,596 (Lavadiere et al.) (Habetler Dep., Ex. 14)
**EXHIBIT J:**       U.S. Pat. No. 9,444,171 (LI) (Habetler Dep., Ex. 15)
**EXHIBIT K:**      U.S. Pat. No. 10,109,943 (Miyamura) (Habetler Dep., Ex. 16)
**EXHIBIT L:**      U.S. Pat. No. 10,498,050 (Liang) (Habetler Dep., Ex. 17)
**EXHIBIT M:**      U.S. Pat. No. D545,304 (Sergi) (Habetler Dep., Ex. 18)
**EXHIBIT N:**      U.S. Pat. No. 708,146 (Soni) (Habetler Dep., Ex. 19)
**EXHIBIT O:**      U.S. Pat. No. D759,595 (Enomoto et al.) (Habetler Dep., Ex. 20)
**EXHIBIT P:**      U.S. Pat. No. D798,237 (Peng) (Habetler Dep., Ex. 21)
**EXHIBIT Q:**      U.S. Pat. No. D862,394 (Hernandez et al.) (Habetler Dep., Ex. 22)
**EXHIBIT R:**      U.S. Pat. No. D777,111 (Zantout) (Habetler Dep., Ex. 23)
**EXHIBIT S:**      Blackburn Mechanical Wire Connector (Habetler Dep., Ex. )
**EXHIBIT T:**      Blackburn Mechanical Wire Connectors (Habetler Dep., Ex. )
**EXHIBIT U:**      U.S. Pat. No. 2,777,119 (Edmunds) (Habetler Dep., Ex. 25)
**EXHIBIT V:**      U.S. Pat. No. 4,196,960 (Gelfand) (Habetler Dep., Ex. 27)
**EXHIBIT W:**      U.S. Pat. No. 7,445,527 (Carr) (Habetler Dep., Ex. 28)
**EXHIBIT X:**      U.S. Pat. No. 9,985,362 (Arenburg et al.)
**EXHIBIT Y:**      U.S. Pat. Pub. No. 2012/0322311 (Sugiyama)
**EXHIBIT Z:**      U.S. Pat. Pub. No. 2015/0017843 (Seehoffer et al.)
**EXHIBIT AA:**      U.S. Pat. Pub. No. 2016/0126664 (Garcia et al)
**EXHIBIT BB:**      U.S. Pat. No. D227,254 (Hoffman) (Habetler Dep., Ex. 30)
**EXHIBIT CC:**      U.S. Pat. No. 623,140 (Quinn et al.) (Habetler Dep., Ex. 32)
**EXHIBIT DD:**      U.S. Pat. No. D847,095 (Wan)
**EXHIBIT EE:**      Simmons' Supplemental Invalidity Contentions

## I.        Background Regarding Wire Connectors

The 817 Patent is entitled "wire connector." **Exhibit A** (817 Patent, cover page).   The 817 Patent shows the design of a wire connector as follows:



Ex. A, FIGURE 1.

A wire connector is a term of art used to identify any structure used to connect a wire to "something else" such as another wire or a circuit board. **Exhibit B** (Deposition of Simmons' designated claim construction expert Thomas Habetler, Ph.D. ("Habetler Dep.")), at 16:2-9.[1]

---

[1]  Although all wire connectors perform a function, *i.e.*, are used to connect a wire, Simmons' expert is <u>not</u> offering an opinion that all wire connector designs are therefore necessarily functional rather than ornamental, such that the designs are incapable of design patent protection.  *See* Ex. B, at 29:13-19.

The terrific diversity of wire connector designs is illustrated by the following examples:



**Ex. C** - U.S. Pat. 6,910,912 (Hung)    **Ex. D** - U.S. Pat. 7,044,776 (King et al.)    **Ex. E** - U.S. Pat. 7,384,297 (King et al.)



**Ex. F** - U.S. Pat. 6,953,373 (Vos)    **Ex. G** - U.S. Pat. 9,048,555 (Chou)    **Ex. H** - U.S. Pat. 7,867,002 (Lin et al.)



**Ex. I** - U.S. Pat. 9,425,596 (Lavadiere et al.)    **Ex. J** - U.S. Pat. 9,444,171  (Li)    **Ex. K** - U.S. Pat. 10,109,943 (Miyamura)



**Ex. L** - U.S. Pat. 10,498,050 (Liang)    **Ex. M** - U.S. Pat. D545,304  (Sergi)    **Ex. N** - U.S. Pat. 708,146  (Soni)



**Ex. O** - U.S. Pat. D759,595 (Enomoto et al.)



**Ex. P** - U.S. Pat. D798,237 (Peng)



**Ex. Q** - U.S. Pat. D862,394 (Hernandez et al.)



**Ex. R** - U.S. Pat. D777,111 (Zantout)

**Exhibits C-R**.

The Patent Examiner of the 817 Patent considered various other wire connectors, including:



**Ex. S** – Blackburn Mechanical Wire Connector



**Ex. T** – Blackburn Mechanical Wire Connectors



**Ex. U** - U.S. Pat. 2,777,119 (Edmunds)



**Ex. V** - U.S. Pat. 4,196,960 (Gelfand)



**Ex. W** - U.S. Pat. 7,445,527 (Carr)



**Ex. X** - U.S. Pat. 9,985,362 (Arenburg et al.)

3



**Ex. Y** - U.S. Pat. Pub. 2012/0322311 (Sugiyama)

**Ex. Z** - U.S. Pat. Pub. 2015/0017843 (Seehoffer et al.)

**Ex. AA** - U.S. Pat. Pub. 2016/0126664  (Garcia et al.)

**Ex. BB** - U.S. Pat. D227,254 (Hoffman)

**Ex. CC** - U.S. Pat. 623,140 (Quinn et al.)

**Ex. DD** - U.S. Pat. D847,095 (Wan)

**Exhibits S-DD**.  The 817 Patent issued after these and other wire connectors were considered.  Ex. A (cover page, "References Cited").

## II.   Overview of the 817 Patent

The 817 Patent is a design patent directed to the ornamental design of a wire connector, which presents a single claim for construction in the form of FIGURES 1 through 7.  Dkt. 75 at 2 (¶ 1).

Each of the FIGURES 1-7 shows a different perspective view of the claimed wire connector.  Ex. B (Habetler Dep.), at 28:16-29:12, 49:23-50:12.  An ordinary designer in the art would recognize that the design from the top down, as depicted

in FIGURE 1, includes a cylindrically-shaped wire lug joined to an inverted "L"-shaped leg base and leg extension, depicted as follows:



Furthermore, the parties have stipulated that the 817 Patent uses surface shading to show curvature as well as flat surface areas of the wire connector, including the following examples:





Dkt. 75-1 at 1, 3.

## III.   Issues Presented

Simmons presents a threshold question of whether an alleged inconsistency in the drawing presented in FIGURE 2, as compared to the other drawings, warrants the invalidity of the patent, either due to patent indefiniteness, lack of enablement, or both.  Conversely, in light of the overwhelming consistency of the design as a whole, as reflected in FIGURES 1 and 3-7, Merrill submits that any inconsistency would be readily understood by an ordinary designer as a mistake in the drafting of FIGURE 2, which does not require the Court to invalidate the 817 Patent.

The second issue presented is whether the Court must verbalize the claim construction of the wire connector as anything more than "the ornamental design for a wire connector, as shown and described in Figure 1-7." *See* Dkt. 75-2 at 1 (Merrill's proposed construction).   Conversely, Simmons asserts that the Court should provide a detailed verbalized construction of the claim of the 817 Patent, to wit, instructing the jury as follows:

(a)   the Wire Lug should be construed to be merely functional and thus excluded from the scope of the claim;

(b)   the inverse "L" Leg Base and Leg Extension should be construed to be merely functional and thus excluded from the scope of the claim; and

(c)   the two holes in the Leg Extension should be construed to be merely functional and thus excluded from the scope of the claim.

Dkt. 75-2 at 1-2 (Simmons' proposed construction).   As shown herein, the Court should reject Simmons proffered invalidity defenses and construe the claim as "the ornamental design for a wire connector, as shown and described in Figure 1-7", rather than parsing the design and drawing undue attention to certain specific aspects thereof, while ignoring others.

**IV.   Argument**

    **A.   Simmons' Perceived Inconsistency Between Patent Drawings Does Not Rise to a Showing of Patent Invalidity by Clear and Convincing Evidence.**

        1.   *The 817 Patent is Definite.*

Simmons argues that the 817 Patent's claim is indefinite. "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). A patent is only indefinite under 35 U.S.C. § 112 whenever its claim, read in light of the drawings, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 134 S.Ct. 2120, 2124 (2014); *In re Maatita*, 900 F.3d 1369, 1376 (Fed. Cir. 2018). "*Nautilus* does not alter the focus of the indefiniteness inquiry for design patents on the <u>overall</u> appearance of the design rather than any one individual feature. *Deckers Outdoor Corporation v. Romeo & Juliette, Inc.*, 2:15-cv-02812-ODW, 2016 WL 7017219, *4 (C.D. Cal. Dec. 1, 2016) (emphasis added).

"[A] design patent is invalid for indefiniteness if the errors and inconsistencies in the patent drawings are of such magnitude that the drawings, taken as a whole, fail to inform, with reasonable certainty, those skilled in the art about the overall

appearance of the design." *Id.* "The burden is on the party asserting invalidity to show it by clear and convincing evidence." *Id.* at *3.

"[F]or a design patent to be invalidated for indefiniteness, 'errors and inconsistencies in the patent drawings must be material and of such magnitude that the overall appearance of the design is unclear.'" *Weber-Stephen Prod. LLC v. Sears Holding Corp.*, 13-cv-01686, 2015 WL 9304343, at *17 (N.D. Ill. Dec. 22, 2015) (internal citation omitted).

In *Deckers Outdoor Corporation v. Romeo & Juliette*, the defendants grounded their indefiniteness argument in the fact that certain drawings in the patent-in-suit depicted the boot with a v-shaped notch on the top inward-facing side of the boot, whereas other drawings did not, as illustrated below:



2016 WL 7017219, at *4.

Rejecting the indefiniteness contention, the Court decided that "a reasonable boot designer, in deciding whether the claimed design includes a notch, would look to the drawings that provide the clearer—not the more obscured—view of that part of the boot." *Id*. The same logic applies in the instant case.

Simmons' argument is that FIGURE 2 of the 817 Patent, unlike the other drawings, does not show the tapering of the width of the leg base as the base extends from the wire lug to the wire extension. Unlike other figures of the 817 Patent, the perspective view of FIGURE 2 does not show the leg base at all. Instead, it merely shows a rear view of the wire lug and the leg extension. Conversely, in other drawings of the 817 Patent, where the leg base is more plainly shown, the tapering of the leg base is always shown – from a top view, bottom view and side view:



Figure 1

Figure 4

Figure 5

Figure 6

Figure 7

Ex. A, FIGS. 1, 4-7 (emphasis added); *see also* **Exhibit EE** (Simmons' Supplemental Invalidity Contentions) at Ex. 2, pp. 2, 5-8).  Furthermore, Dr. Habetler agreed that this tapering is shown in the same manner in FIGURES 1, 4, 5 and 7.  Ex. B, at 62:21-66:11.  Given the consistency of these drawings illustrating the dimensions and shape of the leg base, any lack of tapering in FIGURE 2 amounts to nothing more than a mistake with respect to a relatively small part of the overall design.  *Id*., at 68:1-69:9.

This is not the type of material error as to overall design that would undermine an ordinary observer's ability to ascertain the design of the 817 Patent with <u>reasonable</u> certainty.  An inconsistency between two or more patent drawings "alone does not render the overall appearance of the claimed design uncertain." *Deckers Outdoor Corp.*, 2016 WL 7017219, at *5. By contrast, the position of Simmons' retained expert, if adopted, would result in a determination of patent indefiniteness in virtually every case where an inconsistency can be shown between two or more drawings of the design. Simmons' position should be rejected.

2. *Simmons' Argument that the 817 Patent is not Enabled is Inappropriate at the Claim Construction Stage.*

Simmons also seeks to repackage its indefiniteness argument, arguing that the 817 Patent claim is not enabled. *See* Dkt. 75-2 at 1 ("Simmons contends that the 817 Patent is indefinite (<u>and non-enabled</u>), and thus cannot be construed[.]") (emphasis added). The notion of enablement is rooted in the Patent Act, which states that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same[.]" 35 U.S.C. § 112 ¶ 1 (2006) (now § 112(a)).  "[T]he specification . . . must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *ALZA Corp. v. Andrx Pharm., LLC*,

603 F.3d 935, 940 (Fed. Cir. 2010) (citing *Genentech Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)).   On the other hand, an "artisan's knowledge of the prior art and routine experimentation can often fill gaps, interpolate between embodiments, and perhaps even extrapolate beyond the disclosed embodiments, depending upon the predictability of the art," *AK Steel Corp. v. Sollac,* 344 F.3d 1234, 1244 (Fed. Cir. 2003), and a "patent need not teach, and preferably omits, what is well known in the art," *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987).

Enablement is a fact-intensive analysis that, unlike indefiniteness, is left until after claim construction.   The parties and their experts cannot effectively opine on enablement until the Court renders the claim construction.   Phrased another way, it is not appropriate for the Court to address arguments relating to enablement until the Court and the parties understand the full scope of the claim of the 817 Patent, and whether said claim is definite *vel non*.   Section 112 requires enablement of "only the <u>claimed</u> invention," not matter outside the claims. *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1186 (Fed. Cir. 2002) (citing *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306–07 (Fed. Cir.  2001)) (emphasis added); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 & n.2 (Fed. Cir. 2006); *In re Vaeck*, 947 F.2d 488, 495 (Fed. Cir. 1991) (all that must

be enabled is "the <u>claimed</u> invention") (emphasis added). For that reason, the "enablement inquiry necessarily <u>depends on an interpretation of the claims</u>." *Liquid Dynamics*, 449 F.3d at 1224 & n.2 (emphasis added).  Once the precise scope of the claimed invention is defined, the question is whether undue experimentation is required to make and use the full scope of embodiments of the invention claimed. *See Union Carbide*, 308 F.3d at 1186, n.9 ("Evidence of unsuccessful experimentation without any link to the claims at issue is not evidence of a lack of enablement.").  Whether undue experimentation is required "is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *ALZA*, 603 F.3d at 940 (citing *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)).

Here, as shown above in Section A(1), if the Court determines that the 817 Patent is not indefinite, that means the tapering of the leg base is within the scope of the claim, notwithstanding FIGURE 2.  A bona fide enablement argument therefore must be premised on this claim construction and whether a designer of ordinary skill can build the 817 Patent's wire connector as claimed (with tapering of the leg base) without undue experimentation. *See Union Carbide*, 308 F.3d at 1186, n.9. In its invalidity and claim construction disclosures, including the Joint Statement, Simmons failed to present a bona fide enablement argument and supporting facts

directed to whether undue experimentation would be required to produce a wire connector with the tapering leg base as claimed in the 817 Patent.  *See* Dkts. 75, 75-2 (Joint Statement); Ex. EE (Supplemental Invalidity Contentions), at 29-30.

> **B.     The Court Should Construe the Claim Solely by Reference to the Illustrations in the Patent Drawings.**
>
> > 1.     *The Court Need Not Provide a Detailed Verbalized Construction of the 817 Patent*

A design is better represented by an illustration "than it could be by any description and a description would probably not be intelligible without the illustration." *Dobson v. Dornan*, 118 U.S. 10, 14 (1886). "Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302–03 (Fed. Cir. 2010) (citing *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002) (construing a design patent claim as meaning "a tray of a certain design as shown in Figures 1–3")). The Patent and Trademark Office has further observed that "as a rule the illustration in the drawing views is its own best description. *Manual of Patent Examining Procedure* § 1503.01 (8th ed. 2006). Therefore, the Court should construe the claim of the 817 Patent by reference to the drawings, to wit, "the ornamental design for a wire connector, as shown and

described in Figure 1-7."  As shown herein, no verbal embellishment of the claim's scope is necessary.

Contrary to the claim construction process in utility patent cases, the Federal Circuit has recognized that design patents typically are claimed as shown in drawings, and as such, does not require district courts to provide a detailed verbal description of the claimed design.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (*en banc*).  The *en banc* Federal Circuit opined in *Egyptian Goddess* that "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court <u>not</u> to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."  *Id*. at 680 (emphasis added).

Applying *Egyptian Goddess*, in *Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1224 n.13 (S.D. Fla. 2014), the court rejected the parties' joint request for a verbalized claim construction, stating "[t]he Federal Circuit, however, has warned against the reliance on verbal constructions in design patent cases. Accordingly, the Court does not adopt the Joint Construction and instead construes the claims of the patents solely as incorporating the figures contained therein."

2.     *The Claim Protects the Ornamental Design of the Wire Connector as a Whole, and the Court Should Therefore Reject Simmons' Attempt to Parse Some of its Features.*

Simmons requests that the Court provide a lengthy verbalized construction of the 817 Patent's claim that parses the design into select elements: the "wire lug," the inverse "L" leg base and leg extension, and the two holes in the Leg Extension.  Dkt. 75-2, at 1-2.  Yet, as *Egyptian Goddess* stated, "the court should recognize the risks entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole."  543 F.3d at 680; *accord Sport Dimension, Inc. v. Coleman Co.,* 820 F.3d 1316, 1321 (Fed. Cir. 2016) ("[D]esign patents protect the overall ornamentation of a design, not an aggregation of separable elements."); *Deckers Outdoor Corp. v. Rue Servs. Corp.*, 13-CV-06303-JVS, 2014 WL 12588481, at *2 (C.D. Cal. Aug. 29, 2014) ("Here, the depictions speak for themselves. Adopting the verbal descriptions proposed by Defendants would 'risk of placing undue emphasis on particular features of the design,' which the Federal Circuit warned against in *Egyptian Goddess*. 543 F.3d at 679–80. Thus, it is sufficient for the Court to construe the D999 and D189 Patents 'as shown in the figures.'").

17

This district has followed the foregoing guidance in design patent cases.  In *Rapha Prod. Grp., LLC v. Skullcandy, Inc.*, 1:10-CV-3388-JEC, 2012 WL 13005372, at *3 (N.D. Ga. Aug. 13, 2012), Chief Judge Carnes applied *Egyptian Goddess* to construe the patent claim as simply "the tubular speaker design depicted in the six figures that are attached to the 636 patent application."  This is consistent with the approach advocated by Merrill in the instance case.  On the other hand, Simmons' approach of parsing and commenting on specific elements of the design is inconsistent with that of *Egyptian Goddess* and its progeny.

       3.    *Simmons' Proffered Construction is Incorrect: the Wire Lug is not "Merely Functional"*

A wire connector, just like any product, has a utilitarian purpose. However, "[t]he function of the article itself must not be confused with 'functionality' of the design of the article." *Hupp v. Siroflex of Am., Inc*., 122 F.3d 1456, 1462 (Fed. Cir. 1997). The Court cannot parse, much less "entirely eliminate a structural element from the claimed ornamental design," for "design patents protect the overall ornamentation of a design, not an aggregation of separable elements." *Sport Dimension*, 820 F.3d at 1321.  Moreover, where, as here, alternative designs for the article of manufacture are available, concerns relating to the functionality of the

design are mitigated.  *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir.), *cert. denied*, 510 U.S. 908 (1993).

Simmons asserts that the Court should construe the claim of the 817 Patent, including a statement that the cylindrically-shaped wire lug is "merely functional." Dkt. 75-2, at 1.  However, other designs utilize various other shapes, including cubes and rectangular shapes:



Ex. D - U.S. Pat. 7,044,776 (King et al.)

Ex. S – Blackburn Mechanical Wire Connector

Ex. T – Blackburn Mechanical Wire Connectors

Ex. Z - U.S. Pat. Pub. 2015/0017843 (Seehoffer et al.)

Ex. CC - U.S. Pat. 623,140 (Quinn et al.)

Exs. D, S, T, Z and CC.  In addition, some designs use an oval shape.  Ex. M.

Simmons' own retained expert acknowledged that there are numerous design choices of shape and size for a wire lug:

> Q.   Yes.  Have you seen wire lugs in the – that are available in the industry?
>
> A.   Oh, absolutely. Many times.
>
> Q.   I mean, isn't it true that there's a variety of forms and shapes for wire lugs in the marketplace?
>
> A.   Yes, yes.

Ex. B, at 32:18-24 (emphasis added).  Dr. Habetler also admitted that the size and shape of the top opening of the lug may vary.  *Id*., at 51:1-6.  Moreover, the overall size and shape of the wire lug is not dependent on any terminal block (not shown in the 817 Patent), because it does not sit in a terminal block.  *Id*. at 54:18-23.  Therefore, because the portion of the design claimed relating to the wire lug is not dictated <u>solely</u> by the function of the article of manufacture, it would be error to instruct the jury that the wire lug is merely functional. *Best Lock Corp. v. Ilco Unican Corp*., 94 F.3d 1563, 1566 (Fed. Cir. 1996). Therefore, the Court should reject Simmons' proffered construction.

### 4.   The Inverse "L" Leg Base and Leg Extension are not "Merely Functional"

Where the design in question presents an aesthetically pleasing appearance that is not dictated by function <u>alone</u>, there is no functionality defense.  *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148 (1989).  Such is the case with

various design aspects of the inverse "L" shaped leg base and leg extension, including the curvature of the joining edge of the "L," the rounded corners of the extension, the tapering of the leg base, and the lengths and widths of the base and the extension.



Figure 1

Figure 4

Figure 6

Figure 7

Ex. A, FIGS. 1, 4 and 6-7 (emphasis added).

As shown, the inverse "L" shaped leg base/extension is not "merely functional." Furthermore, Simmons' retained expert Dr. Habetler holds no opinion to the contrary as it pertains to these ornamental aspects of the design. Ex. B, at 55:5-23, 63:3-25, and 64:1-8.

As shown above, for wire connector designs that include a leg base and leg extension, there are numerous shapes of wire connectors, as opposed to the precise "L" design utilized in the 817 Patent.



**Ex. O** - U.S. Pat. D759,595 (Enomoto et al.)

**Ex. S** – Blackburn Mechanical

**Ex. T** – Blackburn Mechanical Wire Connectors

**Ex. V** - U.S. Pat. 4,196,960 (Gelfand)

**Ex. Z** - U.S. Pat. Pub. 2015/0017843 (Seehoffer et al.)

**Ex. BB** - U.S. Pat. D227,254 (Hoffman)

Exs. O, S, T, V, Z and BB.  The availability of so many design alternatives shows that the "L" shaped leg base and extension of the 817 Patent are not merely functional.  Accordingly, the Court should reject Simmons' proffered construction to the contrary.

5.  *Simmons' Proffered Construction is Incorrect: the Two Holes Depicted in the Leg Extension are not "Merely Functional"*

Dr. Habetler opined that the top hole of the leg extension is where the contact of the switch, or the relay part of a switch, contacts the connector, and that the bottom

hole is where the connector fastens to the terminal block.  Ex. B, at 36:16-20.

Neither the lead contact to the connector, or any terminal block, are shown in the

817 Patent.

As to the top hole, Dr. Habetler admitted there is no reason why the design of

the hole must be circular.  *Id*. at 55:24-56:7.   Furthermore, the design of the lower

hole does not have to be circular.  *Id*., at 56:8-18.  Likewise, the placement of a

fastening hole does not have to be located at the lower end of a leg extension.  *Id*.,

at 58:4-11.  A fastener can take any shape, and be placed anywhere.

Here, there are also numerous design alternatives available.  Not all wire

connectors have two holes.  Ex. S, T, U, W, X, Z and BB.  The relative placement,

location, size and shape of any holes may vary.  *Compare, e.g.,* Ex. M *with* Exs. O,

U.  Again, given these alternatives, the Court should reject Simmons' request for a

claim construction which states that the two holes depicted in the leg extension of

the 817 Patent are merely functional.  "Any advantage gained from providing such

a construction would be offset by the risk that the jury would erroneously exclude

the seams entirely from the design, or that it would suggest to them that the drawings

were simply an aggregation of separable elements rather than one overall design."

*Deckers Outdoor Corp*., 2016 WL 7017219, at *6.

For the foregoing reasons, the Court should construe the claim of the 817 Patent as the ornamental design for a wire connector, as shown and described in FIGURES 1-7.  The Court should furthermore determine that Simmons has not shown the claim to be indefinite by clear and convincing evidence.  Finally, the Court should decline Simmons' invitation to consider the enablement of the 817 Patent during the claim construction process.

Dated: May 17, 2021.                              Respectfully submitted,

                                   By:    */s/ Steven G. Hill*
                                          Steven G. Hill
                                          Georgia Bar No. 354658
                                          John L. North
                                          Georgia Bar No. 545580
                                          Martha L. Decker
                                          Georgia Bar No. 420867
                                          HILL, KERTSCHER & WHARTON, LLP
                                          One Overton Park
                                          3625 Cumberland Boulevard, Suite 1050
                                          Atlanta, Georgia
                                          Telephone: (770) 953-0995
                                          Facsimile:  (770) 953-1358
                                          Email:  sgh@hkw-law.com
                                          Email:  jln@hkw-law.com
                                          Email:  md@hkw-law.com

                                          Brett J. Trout, IA Bar No. AT0008075
                                          *Admitted pro hac vice*
                                          BRETT J. TROUT, P.C.
                                          516 Walnut Street
                                          Des Moines, Iowa 50309
                                          Telephone:  (515) 288-9263

Email:  trout@brettrout.com

ATTORNEYS FOR PLAINTIFF
MERRILL MANUFACTURING
COMPANY

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify that the forgoing brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B) [Times New Roman 14-point] and does not exceed the page limit set forth in LR 7.1(D).


Dated: May 17, 2021                    By:  */s/ Steven G. Hill*
                                           Steven G. Hill

                                       *Attorneys for Merrill Manufacturing Co.*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY on this 17th day of May, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

By:   *<u>/s/ Steven G. Hill</u>*
Steven G. Hill

*Attorneys for Merrill Manufacturing Co.*