## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Merrill Manufacturing Company,

               Plaintiff,

                          Case No. 1:20-cv-3941-MLB

v.

Simmons Manufacturing
Company,

               Defendant.

_____/

## **OPINION & ORDER**

Plaintiff Merrill Manufacturing Company sued Defendant Simmons Manufacturing Company for design patent infringement, trade dress infringement, and unfair competition. (Dkt. 31.)  Defendant moves to dismiss Plaintiff's claims for induced, contributory, and willful patent infringement.  (Dkt. 34.)  The Court grants Defendant's motion as to the contributory infringement claim but denies the motion as to the induced and willful infringement claims.

## I.    Background

Plaintiff is an Iowa corporation in the business of developing, manufacturing, and selling a device known as a "terminal block." (Dkt. 31 ¶ 15.)  Inside each terminal block are several copper mechanical wire connectors that can be used by electricians to connect wires in an electrical system. (Dkt. 31-1.)[1] Although Plaintiff has sold its mechanical

---

[1] Strangely, Plaintiff alleges in the Amended Complaint that it is "in the business of, inter alia, developing, manufacturing, and selling terminal blocks." (Dkt. 31 ¶ 15.)  But, in responding to Defendant's motion to dismiss, it insists it is "in the business of developing, manufacturing, and selling pressure switches." (Dkt. 41 at 1.)  In the Amended Complaint, Plaintiff repeatedly refers to its terminal block and attaches the '817 Patent for the copper connector that is included in its terminal block. (*See e.g.* Dkt. 31 ¶¶ 15–18.)  It describes the trade dress of its terminal block and used that term 39 times in the Amended Complaint. (*Id.*)  It uses the term "switch" only twice in the Amended Complaint; both times in the name of the Accused Product. But, in its response it repeatedly talks about its pressure switch, referring to the trade dress as pertaining to it. (Dkt. 41 at 1–2.)  Indeed, Plaintiff uses the term "terminal block" only twice in its response, both times also in the name of the Accused Product.  The Court "guesses" Plaintiff's terminal block is not just a device used to connect wires but, in this context, is part of a pressure switch.  Of course, Plaintiff knows what the product at issue is, and Defendant raises no issue in this regard.  And, what exactly the device does is not relevant to the issues presented in Defendant's motion to dismiss.  Still, the Court uses the term "terminal block" as that was the term used in the Amended Complaint.  But, going forward, perhaps Plaintiff can be mindful of the Court's lack of expertise in electrical engineering, fluid control systems, or groundwater control systems and maintain consistency between its pleadings.

blocks since at least 2018, it only obtained a patent for the copper mechanical connector inside its terminal blocks in April 2020. (Dkts. 31 ¶ 17; 31-1.)  But Plaintiff claims that, even before obtaining the patent, it continuously marketed its terminal block under a unique and distinctive trade dress consisting of: (1) chamfered top edges on the sideplates; (2) chamfered side edges on the sideplates; (3) a molded-in edge line running the length of the sideplates and the top plate; (4) elevated platforms on the sideplates; (5) sharp transition edges on the sideplates transitioning from the platforms to ramps; (6) sharp transition edges on the sideplates transitioning from the ramps to the upper surfaces of the sideplates; (7) decorative center rib defining a shelf extending from the top plate; (8) decorative center boss and ramp extending from the top plate; and (9) multifaceted rear plates of spring stop comprising curved and flat surfaces defining a shelf.  (*Id.* ¶ 17.) Plaintiff refers to these elements collectively as the "MTB Trade Dress." (*Id.*)

Defendant is a Georgia corporation also in the business of selling terminal blocks and associated components. (*Id.* ¶ 28.)  Plaintiff claims that Defendant markets and offers for sale terminal blocks in the United

States that are "virtually identical" to the MBT Trade Dress.  (*Id.* ¶ 28.)
Plaintiff alleges Defendant adopted its MBT Trade Dress "with the intent
to deceive its consumers as the source or origin of its terminal blocks.  (*Id.*
¶ 33.)  Plaintiff identifies one of Defendant's infringing terminal blocks
as a product Defendant sells under the name "SIMMONS Quick Set Wire
Connections Pressure Switch," including a specific item Plaintiff
identifies as #SIMS4060 (the "Accused Device").  (*Id.* ¶¶ 51–52.)

On July 10, 2020 (three months after obtaining Patent '817 for the
copper connector), counsel for Plaintiff transmitted a letter to
Defendant's president via certified mail and electronic mail, identifying
the '817 Patent and attaching a copy of it.  (*Id.* ¶ 54.)  The letter informed
Defendant of Plaintiff's belief Defendant was manufacturing and using
in the United States a terminal block that infringes on Plaintiff's trade
dress as well as the '817 Patent. (*Id.*; Dkt. 24-2 at 1.)

Plaintiff filed suit in the Southern District of Iowa on the same day,
asserting claims for design patent infringement, trade dress
infringement, and unfair competition.  (Dkt. 1 at 1.)  Defendant learned
of the patent-in-suit about five days later. (Dkts. 31 ¶¶ 39–43; 34-1 at 3.)
Defendant moved to transfer venue to this Court and to dismiss

Plaintiff's claims for contributory and willful patent infringement. (Dkt. 11.)  The Iowa court transferred the case to this Court, refusing to consider the motion to dismiss. (Dkt. 16.)  Plaintiff then filed its first Amended Complaint. (Dkt. 31.)  As part of this, Plaintiff alleges that, since receiving notice of the '817 Patent on July 15, 2020, Defendant has continued to make, use, sell or import the Accused Device. (*Id.* ¶ 54.) Plaintiff also alleges that since Defendant learned about the '817 Patent, Defendant has induced others (such as Defendant's customers) to infringe the '817 Patent by instructing them to use the Accused Devices or selling them that device. (*Id.* ¶ 57.)  Defendant's web page, attached as Exhibit D to Plaintiff's Amended Complaint, includes photos and pricing for the Accused Device. (Dkt. 31-4 at 2.)

Defendant renewed its motion to dismiss. (Dkt. 34.)

## II.  Standard of Review

In ruling on a motion to dismiss, the court must accept all well-pleaded facts as true and construe them in the light most favorable to the plaintiff. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  A complaint offering mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" cannot state a

claim and should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To survive a motion to dismiss, a complaint thus must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.  Discussion

Defendant asks this Court to dismiss Plaintiff's claims of induced infringement under 35 U.S.C. § 271(b), contributory infringement under 35 U.S.C. § 271(c), and willful infringement under 35 U.S.C. § 284 for failure to state a claim.

### A.    Induced Infringement

To properly plead induced infringement, a plaintiff must allege "the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) (quoting *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir.

6

2014)).[2]  A plaintiff must allege the defendant knew about the patents-in-suit; such knowledge is a prerequisite of being able to "knowingly induce infringement." *DSU Medical, Corp. v. Jms. Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).  The knowledge requirement "may be satisfied by a showing of actual knowledge or willful blindness." *Info-Hold, Inc.*, 783 F.3d at 1372–73.  Willful blindness, as a proxy for actual knowledge, requires more than negligence or even recklessness.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011).  It means the alleged inducer (1) subjectively believed there was a high probability of the patent-in-suit and (2) took deliberate actions to avoid learning or confirming that fact.  *Id.*

---

[2] The United States Court of Appeals for the Federal Circuit has "exclusive jurisdiction . . . of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1).  Thus, the Federal Circuit's rulings on substantive patent law are binding on this Court.  *See, e.g.*, *Arlaine & Gina Rockey, Inc. v. Cordis Corp.*, No. 02–22555, 2004 WL 5504978, at *17 n. 5 (S.D. Fla. Jan. 5, 2004) ("Decisions by the . . . Federal Circuit . . . provide controlling authority on the aspects of this case that are unique to patent law[, and] [d]ecisions by the Eleventh Circuit govern issues that are not unique to patent law . . . .").

Defendant argues Plaintiff fails to state a proper claim for induced infringement because the Amended Complaint asserts neither pre-suit knowledge of the patent-in-suit, nor an intent to induce infringement.

### 1.   Knowledge of Patent

There is a split of authority on what constitutes adequate knowledge of the patent-in-suit. Some courts say a plaintiff must allege pre-suit knowledge of the patent-in-suit and thus knowledge gained from the filing of the complaint is insufficient and irrelevant. *See e.g Brandywine Commc'ns Techs., LLC v. T–Mobile USA, Inc.*, 2012 WL 5266049, at *7 (M.D. Fla. Oct. 24, 2012).[3] Defendant pushes this reasoning. Other courts, however, have found "there is no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct," and that "a defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint" is enough to plead induced infringement. *See e.g. Walker*

---

[3] *See also Aguirre v. Powerchute Sports, LLC*, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011); *Zamora Radio, LLC v. Last.FM, Ltd.*, 758 F. Supp. 2d 1242, 1257 (S.D. Fla. 2010); *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010); *Mallinckrodt, Inc. v. E–Z– Em Inc.*, 670 F. Supp. 2d 349, 354 n. 1 (D. Del. 2009).

*Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012).[4]

Plaintiff pushes this interpretation.  Neither the Federal Circuit nor the

Supreme Court have considered this issue.[5]

The Court adopts the latter position and concludes post-suit

knowledge satisfies the knowledge element of indirect infringement, at

least when an amended complaint has been properly filed.  "[W]hat

matters is that the putative infringer has knowledge of the patents-in-

suit and continues to allegedly infringe with that knowledge, whether

that knowledge is obtained through pre-suit or post-suit notice."

*Intellicheck Mobilisa, Inc.*, 2017 WL 5634131, at *11.  "As long as the

---

[4] *See NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, No. CV 19-1031, 2019 WL 5626647, at *4 (D. Del. Oct. 31, 2019); *Intellicheck Mobilisa, Inc. v. Honeywell Int'l Inc.*, No. C16-0341, 2017 WL 5634131, at *11 (W.D. Wash. Nov. 21, 2017); *Corydoras Techs., LLC v. Apple Inc.*, No. 2:16-CV-00538, 2016 WL 9242435, at *2 (E.D. Tex. Nov. 23, 2016); *Zond, Inc. v. SK Hynix Inc.*, No. CIV.A. 13-11570, 2014 WL 346008, at *3 (D. Mass. Jan. 31, 2014); *Bascom Research LLC v. Facebook, Inc.*, Nos. C 12–6293 to –97 SI, 2013 WL 968210, at *3 (N.D. Cal. Mar. 12, 2013); *Swipe Innovations, LLC v. NCR Corp.*, No. 1:13-cv-2219 *8-11 (N.D. Ga Nov. 18, 2013).

[5] The U.S. District Court for the District of Delaware has employed both of the above competing approaches.  After its decision in *Walker Digital*, however, the court has followed the latter majority approach, holding that service of a complaint can satisfy the knowledge component for a claim of induced infringement based on post-litigation conduct. 852 F. Supp. 2d at 556.

defendant has knowledge of the patents-in-suit and yet continues to engage in potentially infringing conduct, a plaintiff can maintain an indirect infringement count." *Id.*; *see also Serv. Sols. U.S., LLC v. Autel U.S. Inc.*, No. 13-10534, 2013 WL 5701063, at \*10 (E.D. Mich. Oct. 18, 2013) ("[O]nce Defendants became aware of this lawsuit, they had demonstrable knowledge of the patents-in-suit" and thus, "[a]ny activity undertaken by Defendants to encourage infringing product use since then would clearly be done with knowledge of the patents."). The Court finds Plaintiff's service of the complaint sufficient to show Defendant's knowledge of the patent-in-suit at least as of July 15, 2020.

As other courts have reasoned, Plaintiff may only recover damages for infringing conduct that occurred after Defendant learned of the patent. *See e.g., NexStep, Inc.*, 2019 WL 5626647, at \*4 ("Courts in this district have 'par[ed] inducement claims down by time period when Plaintiff fails to adequately plead pre-suit inducement.'").[6] If Plaintiff

---

[6] *See also Intellicheck Mobilisa, Inc.*, 2017 WL 5634131, at \*12 (W.D. Wash. Nov. 21, 2017) ("Although a plaintiff alleging indirect infringement may rely upon post-suit knowledge, doing so prohibits the plaintiff from collecting damages related to any pre-filing conduct."); *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 882 (E.D. Va. 2013) (use of infringement suit to establish indirect infringement permits only recovery for post-filing conduct).

later discovers facts to plausibly suggest Defendant possessed the requisite knowledge of the patent-in-suit to support a claim of pre-suit inducement, Plaintiff may, if appropriate, seek leave to amend its Amended Complaint.

### 2.   Intent to Cause Others to Infringe

Defendant argues that the Amended Complaint "is devoid of any allegations" that Simmons (1) "took affirmative acts to encourage the alleged infringement of the patent-in-suit by others" or (2) "possessed a specific intent and engaged in specific actions to induce others to infringe the Patent-in-Suit." (Dkt. 34-1 at 12–13.)  But the Amended Complaint alleges that Defendant made, used, sold, or imported a terminal block containing wire connectors infringing the '817 Patent.  (Dkt. 31 ¶¶ 51–53.)  And it claims Defendant has, since learning of the '817 Patent, instructed or otherwise acted with the intent to cause others, such as Defendant's customers, to infringe the '817 Patent by using or selling the Accused Device.  (*Id.* ¶¶ 55–57.)  This allegation is much like the one in *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, where the plaintiff alleged the defendant enticed customers to use the allegedly infringing product after learning of the lawsuit.  990 F. Supp. 2d 50, 58 (D. Mass. 2014).  The

court noted that "[w]hilst a conclusory pleading, it seems illogical that the production, for sale, of goods, for which there is no potential non-infringing use, would not permit a reasonable inference, especially at the motion to dismiss stage that the manufacturer/importer intended to encourage infringement" and denied the motion to dismiss. *Id.* at 58–59.

Drawing all reasonable inferences in Plaintiff's favor, the allegation that Defendant advertised and sold the Accused Product to others or aided others in doing so—which Plaintiff claims to be an infringing use of its '817 Patent—is enough to satisfy the intent requirement.[7] *See e.g., In re Bill of Lading Transmission & Processing System Patent Litigation*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (holding defendant's advertising gave rise to "reasonable inference that defendant intend[ed] to induce [ ] customers to accomplish these benefits through utilization of the patented method" which was "sufficient to push the complaint past the

---

[7] The Court recognizes that Plaintiff's '817 Patent relates to its wire connector and not its Terminal Block.  But whether Defendant's sale of the Accused Product constitutes an "infringing use" of the patented wire connector is a factual dispute not for the Court to decide at this stage of the case.

line "between possibility and plausibility").[8]   The Court thus denies

Defendant's motion to dismiss Plaintiff's claim for induced infringement.

## B.    Contributory Infringement

Plaintiff also asserts contributory infringement under section

271(c) of the statute, which states:

> Whoever offers to sell or sells within the United States or
> imports into the United States a component of a patented
> machine, manufacture, combination or composition, or a
> material or apparatus for use in practicing a patented process,
> constituting a material part of the invention, knowing the
> same to be especially made or especially adapted for use in an
> infringement of such patent, and not a staple article or
> commodity of commerce suitable for substantial
> noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). Like induced infringement, "contributory

infringement requires knowledge of the patent-in-suit and knowledge of

patent infringement." *Commil United States, LLC v. Cisco Sys., Inc.*, 135

S. Ct. 1920 (2015) (citing *Aro Mfg. Co. v. Convertible Top Replacement

Co.*, 337 U.S. 476, 488 (1964)).

---

[8] *See also MEMC Elec. Materials, Inc, v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005) ("Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe.").

Though Plaintiff has sufficiently pled the knowledge component, as discussed above, Plaintiff's claim for contributory infringement still fails as a matter of law.  Plaintiff has pled no facts suggesting Defendant has sold or offered for sale "a component of a patented machine, manufacture, combination or composition" constituting a material part of Plaintiff's patented wire connector. Plaintiff's allegations may support an inference that the '817 Patent is *a component of* Defendant's Accused Device.  But that is irrelevant for purposes of contributory infringement under 35 U.S.C. § 271(c).  So Defendant's motion to dismiss Plaintiff's claim for contributory infringement is granted.

## C.    Willful Infringement

Under § 284 of the Patent Act, once infringement has been established, the court "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.  Enhanced damages are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," commonly described as "willful, wanton, malicious, bad faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).  In 2007, the Federal Circuit decided *In re Seagate*

*Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007), and set forth a two-part test for determining willful infringement.  The so-called *Seagate* test required the plaintiff to show by clear and convincing evidence, first, objective recklessness (specifically, clear and convincing evidence "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent") and, second, subjective knowledge (specifically, that the risk of infringement "was either known or so obvious that it should have been known to the accused infringer"). *Id.* at 1371.  In *Halo Electronics*, the Supreme Court concluded the *Seagate* test was "unduly rigid, and [ ] impermissibly encumber[ed] the statutory grant of discretion to district courts" to award enhanced damages found in Section 284.  136 S. Ct. at 1932 (internal quotation marks and citation omitted).  In doing so, the Supreme Court reiterated several times its conclusion that Section 284 "gives district courts discretion in meting out enhanced damages" to "punish the full range of culpable behavior" based on the "particular circumstance of each case."

Defendant says to state a claim for willful infringement, Plaintiff must allege facts showing pre-suit knowledge of the patent-in-suit.  (Dkt. 34-1 at 23.)  Because Plaintiff includes no such allegations, Defendant

says the claim for willful infringement must be dismissed. *Id.* Defendant also says the complaint must be dismissed because it contains insufficient facts to suggest Defendant's conduct was egregious. *Id.* This Court disagrees.

### 1.   Knowledge of the Patent

Courts are split about whether post-suit knowledge of a patent is enough to warrant enhanced damages for willful infringement. Some have concluded *Halo* did not abrogate *Seagate's* holding that the focus of a willful infringement claim must be on pre-litigation conduct. *See, e.g.*, *Wis. Alumni Research Found. v. Apple, Inc.*, 261 F. Supp. 3d 900, 917–18 & n.6 (W.D. Wis. 2017); *Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, Civil Action File No. 1:16–CV–2669, 2017 WL 3469535, at *2–3 (N.D. Ga. Apr. 6, 2017). Other courts have disagreed, concluding alleged infringement after the filing of a lawsuit could, in the right circumstances, amount to willful infringement. *See, e.g., Progme Corp. v. Comcast Cable Commc'ns LLC*, CIVIL ACTION NO. 17–1488, 2017 WL 5070723, at *12 (E.D. Pa. Nov. 3, 2017).[9]

---

[9] *See also T-Rex Prop. AB v. Regal Ent. Grp.*, No. 6:16-CV-1029, 2017 WL 4229372, at *8 (E.D. Tex. Aug. 31, 2017); *Zimmer Surgical, Inc. v. Stryker*

In this Court's view, the latter approach is more consistent with the Supreme Court's reasoning in *Halo,* which emphasized the discretion of courts to award enhanced damages based on the facts and circumstances before it rather than any rigid rule.   *Halo* also explained that willful infringement should be understood to require only subjective willful infringement, explaining that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct."  *Halo*, 136 S. Ct. at 1933.   There is no reason post-filing conduct could not evidence   such   culpability.    Obviously   an   allegation   of   willful infringement in an initial complaint cannot depend solely on post-suit conduct   because   the   accused   infringer   does   not   have   the   requisite "culpability" or offending "knowledge" at the time of the filing.  *Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:16-CV-1400, 2017 WL 2543811, at *4 (D. Or. June 12, 2017).  But Plaintiff has filed an Amended Complaint to allege post-filing, willful infringement.  (Dkt. 31 ¶ 54.)  The Court joins most courts in holding that those allegations *may* support a claim for

---

*Corp.*, Civil Action No. 16–679, 2017 WL 3736750, at *2 (D. Del. Aug. 30, 2017); *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1025–27 (N.D. Cal. 2017); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016).

willful infringement.  *See, e.g., Progme Corp.*, 2017 WL 5070723, at \*12 (declining to dismiss a post-suit willful infringement claim, based on the facts that the defendant knew of the patent and "persisted in its alleged infringement[,]" as "further development of the record [could yield] evidence of egregious conduct"). Or at least they don't fail as a matter of law.[10]

## 2.    Adequacy of the Other Pleadings

Just as they disagree on the knowledge requirement for willful infringement post-*Halo*, many courts have disagreed as to whether the plaintiff/patentee must plead facts showing the defendant/accused infringer has engaged in "egregious" behavior.   Some courts have required a plaintiff to allege how the defendant's conduct "amounted to an egregious case of infringement of the patent." *Varian Med. Sys., Inc. v. Elekta AB*, Civil Action No. 15–871, 2016 WL 3748772, at \*8 (D. Del. July 12, 2016); *see also Finjan, Inc. v. Cisco Sys. Inc.*, Case No. 17–cv–

---

[10] The Court notes that here, the original complaint also contained a claim for willful infringement. (Dkt. 1 at 1.)   Consistent with this Opinion, the willful infringement claim in the original complaint would have been dismissed without prejudice, permitting Plaintiff an opportunity to amend its complaint if Defendant, with knowledge of the patent, engaged in any post-filing conduct.  Plaintiff has already done so here.

00072, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017). Other courts have concluded a plaintiff need not plead facts plausibly showing that "egregious" infringement has occurred, but only that the infringer's actions were "subjectively" willful. *See, e.g., Deere & Co. v. AGCO Corp.*, No. CV 18-827, 2019 WL 668492, at *5 (D. Del. Feb. 19, 2019); *Bio–Rad Labs. Inc. v. Thermo Fisher Sci., Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017).

Again, the Court agrees with the latter. In *Halo*, the Supreme Court explained that the "subjective willfulness of a patent infringer, intentional or knowing, *may* warrant enhanced damages" and that enhanced damages "should generally be reserved for egregious cases *typified* by willful misconduct." *Halo*, 136 S. Ct. at 1933–34 (emphasis added). In evaluating this language, another district court noted:

> these statements, on their face, suggest that "egregious cases" of infringement are the kinds of cases where a district court will be most likely to enhance damages. And they suggest that "willful misconduct" (or willful infringement) will be a characteristic of many—though not necessarily all— "egregious cases" of infringement. But they also indicate that willfulness and egregiousness are not the same thing.

*Valinge Innovation AB v. Halstead New England Corp.*, No. CV 16-1082, 2018 WL 2411218, at *8 (D. Del. May 29, 2018), report and

19

recommendation adopted, No. CV 16-1082, 2018 WL 11013901 (D. Del. Nov. 6, 2018).   Sound analysis on this issue.[11]   In *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017), the Federal Circuit also approved a jury instruction on willful infringement that did not require any separate finding of egregiousness. The court recognized that the Supreme Court's decision in *Halo* "emphasized that subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer can support an award of enhanced damages." *Id.* (internal quotation marks and citation omitted).   Admittedly the Federal Circuit did not address this precise issue but it approved an instruction that had no reference to egregious conduct.

The only allegation in the Amended Complaint relevant to Plaintiff's willful infringement claim is that, since receiving notice of the patent and its alleged infringement, Defendant has continued to make,

---

[11] The Court notes that the *Valinge Innovation* court reached a different conclusion from the Court on the prior issue—whether willful infringement requires allegations of pre-filing knowledge.

20

use, sell, and import the Accused Device.[12]  Perhaps discovery will yield

evidence showing Defendant's actions in this regard were willful,

wanton, malicious, consciously wrongful, flagrant, or characteristic of a

pirate.  Maybe not.  At the pleading stage, however, the Court finds the

allegation sufficient to survive a motion to dismiss.  *See Deere & Co.*, 2019

WL 668492, at *5 ("Under those Federal Circuit holdings, which are

binding on this Court, to plead a willfulness-based enhanced damages

claim, a plaintiff need only allege that the defendant acted despite a risk

of infringement that was either known or so obvious that it should have

been known.").

---

[12] Plaintiff's response brief teems with allegations that "the closeness of [Defendant's] monitoring of [Plaintiff] in general and of [Plaintiff's] patented pressure switch in particular (close enough to directly copy nine separate nonfunctional elements of [Plaintiff's] patented pressure switch)" meets Plaintiff's pleading standard on its willful infringement claim.  But Plaintiff again conflates its claim for infringement of the '817 Patent for its wire connector with infringement of trade dress claim related to its pressure switch.  The allegations relating to Defendant's viewing, monitoring, and copying Plaintiff's trade dress on or around December 3–6, 2018, have nothing to do with Plaintiff's patent infringement claim.  (Dkt. 31 ¶ 54.)  Moreover, those allegations relate to events that occurred long before Plaintiff's patent was granted in April 2020.

## IV.    Conclusion

The   Court   **GRANTS   IN   PART   AND   DENIES   IN   PART**
Defendant's Motion to Dismiss (Dkt. 34).   The Court **GRANTS** the
motion  to  dismiss  Plaintiff's  claim  for  contributory  infringement  and
**DENIES**   the   motion   to   dismiss   Plaintiff's   claims   for   induced
infringement and willful infringement.

**SO ORDERED** this 9th day of August, 2021.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE